**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jelili Olaose GIWA,
Defendant-Appellant.**

No. 86–1924.

United States Court of Appeals,
Fifth Circuit.

Oct. 21, 1987.

Gerhard Kleinschmidt, Ft. Worth, Tex. (Court appointed), for defendant-appellant.

Jelili Olaose Giwa, pro se.

Lynn Hastings, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before GOLDBERG, JOHNSON, and WILLIAMS, Circuit Judges.

JOHNSON, Circuit Judge:

Defendant Jelili Olaose Giwa appeals his conviction of two counts of using a false Social Security number in violation of 42 U.S.C. § 408(g)(2). Specifically, Giwa asserts that the district court erred in denying his motion to dismiss his indictment following the Government's failure to comply with the Speedy Trial Act. Giwa also argues that the district court improperly denied his motion to suppress evidence seized during the execution of a search warrant. For the reasons set forth below, we reject both contentions and affirm.

## I. FACTS AND PROCEDURAL HISTORY

On August 1, 1986, a special agent of the United States Secret Service obtained a search warrant for the residence of Dominic Ohiwere Aruya with the purpose of the warrant being to search for evidence of credit card fraud. On that same day, the agent obtained a criminal complaint against Aruya for credit card fraud in violation of 18 U.S.C. § 1029. Aruya was described as a black male with a foreign accent of Nigerian nationality. Two different secret service agents, who had been given a description of Aruya, went to Aruya's apartment to execute the search and arrest warrants. The agent who originally obtained the warrant and complaint did not accompany the other secret service agents to Aruya's apartment.

Upon arriving at the apartment, the agents knocked on the door and identified themselves as federal agents; whereupon, defendant Giwa, the sole individual present in the apartment at the time, opened the door clad only in slacks and a bathrobe. Acting upon the mistaken belief that Giwa, a black Nigerian male, was Dominic Aruya, the agents placed Giwa against the wall, conducted a pat-down search, and handcuffed him.

Thereafter, the agents asked Giwa if he was in fact Aruya, to which Giwa responded he was not. When asked for identification, Giwa indicated to the agents that his identification was in a flight bag in the

closet and pointed to the closet to which he was referring. The agents then retrieved the flight bag from the closet and confirmed with Giwa his ownership of the bag. After the agents refused a request by Giwa to obtain his identification from the bag himself, Giwa informed the agents that his identification was in the side pocket of the bag. The agents opened the pocket and discovered eight Gulf-Chevron credit cards and one American Express credit card, none of which were in Giwa's name, as well as identification bearing Giwa's photograph. The agents, having probable cause at that point to believe Giwa had committed credit card fraud, arrested him.

On the basis of the evidence obtained in the search of Giwa's bag and further evidence discovered during a search of his vehicle, Giwa was formally charged on August 4, 1986, with credit card fraud in violation of 18 U.S.C. § 1029. On September 10, 1986, forty days following his initial arrest, Giwa was indicted on six counts of mail fraud, 18 U.S.C. § 1341, and the knowing and willful use of a false Social Security number with the intent to deceive, 42 U.S.C. § 408(g)(2). He was not indicted on the credit card fraud charge. Giwa filed a motion to dismiss the indictment on September 12, 1986, alleging that the Government had violated the Speedy Trial Act, section 3161(b), by failing to obtain an indictment within thirty days of Giwa's arrest. Giwa also filed a motion to suppress challenging the validity of the search of his bag. The district court denied both motions.

In denying Giwa's motion to dismiss, the district court reasoned that an arrest triggers the running of the thirty day time period in section 3161(b) only if the arrest is for the same offense for which the accused is subsequently indicted. Applying the above reasoning, the district court concluded that since the offense for which Giwa was arrested, credit card fraud, was different from the offenses for which Giwa

was ultimately indicted, mail fraud and use of a false Social Security number, the Speedy Trial Act was not violated. After the denial of his motions, Giwa entered a conditional guilty plea to two counts of use of a false Social Security number, reserving his right to appeal the denial of his pretrial motions.

## II. DISCUSSION

### A. *Speedy Trial Act*

■ Giwa claims that the forty day delay between his initial arrest on August 1, 1986, and his subsequent indictment on September 10, 1986, violated his rights under 18 U.S.C. § 3161(b) of the Speedy Trial Act ("the Act"). Section 3161(b) provides that "any information or indictment charging an individual with the commission of an offense *shall be filed within thirty days from the date on which such individual was arrested....*" (emphasis added). If the Government fails to return an indictment within thirty days of arrest, section 3162(a)(1) of the Act mandates as a sanction dismissal of the charges contained in the original complaint.[1] The sanction of dismissal contained in section 3162(a)(1) is triggered automatically if the indictment is not filed within the thirty day period; therefore, we need not inquire whether the delay in the instant case was due to bad faith or negligence on the part of the Government prosecutors. *United States v. Pollock*, 726 F.2d 1456, 1462 (9th Cir.1984).

Giwa concedes that the Government has not technically violated section 3161(b). However, Giwa argues that since his arrest and indictment flow out of the same set of transactions and circumstances, the spirit of the Speedy Trial Act has been violated; thus, the Act bars prosecution of not only the charge of credit card fraud, but also the charges of mail fraud and use of a false Social Security number as well. This proposed construction of the Act is overly broad.

---

1. 18 U.S.C. § 3162(a)(1) provides:
   If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.

■ While this Court has not yet addressed the dismissal sanction in section 3162(a)(1) in this context, every circuit which has decided this issue thus far has adopted a narrow interpretation of section 3162(a)(1), holding that if the Government fails to indict a defendant within thirty days of arrest, the Act requires *dismissal of only the offense or offenses charged in the original complaint.* *United States v. Ray,* 768 F.2d 991, 997 (8th Cir.1985) (arrest on one charge does not trigger the right to a speedy trial on another charge filed after arrest); *United States v. Napolitano,* 761 F.2d 135, 137 (2d Cir.), *cert. denied,* 474 U.S. 842, 106 S.Ct. 129, 88 L.Ed.2d 106 (1985) (rejecting defendant's claim that the Act bars prosecution not only for the charge alleged in the complaint, but also for any conduct arising out of the same criminal episode which was known or reasonably should have been known at the time the complaint was filed); *United States v. Heldt,* 745 F.2d 1275, 1280 (9th Cir.1984) (charges not included in the original complaint are not covered by the Act....); *United States v. Brooks,* 670 F.2d 148, 151 (11th Cir.), *cert. denied,* 457 U.S. 1124, 102 S.Ct. 2943, 73 L.Ed.2d 1339 (1982) (arrest triggers the running of section 3161(b) of the Speedy Trial Act only if the arrest is for the same offense for which the accused is subsequently indicted).[2]

The specific statutory language in section 3162(a)(1) supports the construction given that provision by the courts. The Act requires dismissal of *only* those charges contained in the original complaint. "Absent a clear indication of legislative intent to the contrary, the statutory language controls its construction." *Ford Motor Credit Co. v. Cenance,* 452 U.S. 155, 158 n. 3, 101 S.Ct. 2239, 2241 n. 3, 68 L.Ed.2d 744 (1981).

Moreover, the legislative history of the Act supports a narrow interpretation of section 3162(a)(1). While the initial drafts of the Act barred prosecution of those offenses contained in the complaint or "any offense based on the same conduct or arising from the same criminal episode," or those offenses "which were known or reasonably should have been known at the time of dismissal," Congress expressly rejected those drafts in favor of the more restrictive version currently in effect.[3] A. Partridge, *Legislative History of Title I of the Speedy Trial Act of 1974,* (Fed. Judicial Center 1980) at 32–33. The original versions of the Act

> would have required courts to engage in the complex task of investigating the relationship between the conduct underlying the offenses charged in the complaint and the conduct underlying the offenses listed in the indictment. ... The version of section 3162 actually passed by Congress, however, creates a sensible legal test that courts can efficiently apply.

**2.** Similarly, courts have held that an arrest on state charges does not trigger the 30-day period of § 3161(b) for purposes of a subsequent indictment on federal charges. *United States v. Johnson,* 815 F.2d 309, 312 (5th Cir.1987); *United States v. Ray,* 768 F.2d at 997; *United States v. Shahryar,* 719 F.2d 1522, 1525 (11th Cir.1983); *United States v. Iaquinta,* 674 F.2d 260, 264 (4th Cir.1982); *United States v. Brown,* 605 F.2d 389, 395 (8th Cir.1979).

**3.** The dismissal sanction of § 3162(a)(1) has been characterized as the most controversial topic in the development of Speedy Trial legislation. *See* A. Partridge, at 31.

The Act went through numerous drafts. The initial drafts, which Congress rejected, contained sanction provisions requiring the dismissal with prejudice of any indictment brought more than 30 days after arrest if such indictment charged an offense which was "required to be joined with the offense [stated in the complaint]," H.R. 7107, 92d Cong., 1st Sess., 117 Cong.Rec. 9063 (April 1, 1971); *see also* S. 895, 92d Cong., 1st Sess., 117 Cong.Rec. 3407 (Feb. 22, 1971), or, charged an "offense based on the same conduct or arising from the same criminal episode, and any other offense required to be joined with the issue," S. 754, 93d Cong., 1st Sess., 119 Cong.Rec. 3265 (Feb. 5, 1973), *see also* H.R. 17409, 93d Cong., 2d Sess., 120 Cong.Rec. 35775 (Oct. 16, 1974), or, charged "offenses which were known or reasonably should have been known at the time of dismissal," H.R. 17409, 93d Cong., 2d Sess. (1974). The Act was amended and narrowed on the House floor to express only its present very limited application. *See* 120 Cong.Rec. 41793–95 (Dec. 20, 1974). *See generally* A. Partridge, *Legislative History of Title I of the Speedy Trial Act of 1974* 194–95 (Fed. Judicial Center 1980).

*Napolitano,* 761 F.2d at 138.

With the present more restrictive language the offenses to be dismissed are now apparent on the face of the complaint.

*Pollock,* 726 F.2d at 1463.[4]

Prosecutors, however, are not free to delay indefinitely bringing charges against an individual which are not brought in the initial complaint. The applicable statute of limitations, the due process clause of the fifth amendment, the general sixth amendment right to a speedy trial, and the power of the court to dismiss a case in its entirety give some degree of protection for a defendant from undue delay of prosecution by the authorities. *Heldt,* 745 F.2d at 1280 (quoting *Pollock,* 726 F.2d at 1463 n. 11).

■ Furthermore, there does exist a notable exception to the general rule that an arrest on one charge does not trigger the right to a speedy trial on another charge filed after arrest. If a subsequent charge merely "gilds" the initial charge filed

against an individual and the different accusatorial dates between the two charges are not reasonably explicable, the date of the initial arrest may trigger the applicable time periods of the Act as to prosecution for both offenses. *Napolitano,* 761 F.2d at 138; *United States v. Nixon,* 634 F.2d 306, 309 (5th Cir.), *cert. denied,* 454 U.S. 828, 102 S.Ct. 120, 70 L.Ed.2d 103 (1981) (quoting *United States v. DeTienne,* 468 F.2d 151, 155 (7th Cir.1972), *cert. denied,* 410 U.S. 911, 93 S.Ct. 974, 35 L.Ed.2d 274 (1973)).

■ Turning to the facts of the instant case, Giwa was initially arrested on August 1, 1986, and charged three days later with the offense of credit card fraud in violation of 18 U.S.C. § 1029(a)(3).[5] On September 10, 1986, forty days after his intial arrest, Giwa was indicted for mail fraud and use of a false Social Security number in violation of 18 U.S.C. § 1341[6] and 42 U.S.C. § 408(g)(2).[7] The apparent reason Giwa

**4.** Furthermore, if we were to adopt the interpretation of § 3162(a)(1) proposed by Giwa, applying the dismissal sanction to all offenses arising from the same set of transactions or circumstances, such a holding would create a compulsory joinder of offenses rule for government prosecutions. Federal Rule of Criminal Procedure 8 currently provides for permissive, rather than mandatory, joinder of offenses.

> To require that defendants be indicted within 30 days of arrest for *all* federal offenses that resulted from or were in connection with the circumstances bringing about the arrest would, in essence, compel the government to join in one indictment all charges then available against defendants based on the same conduct.

*United States v. Mulherin,* 521 F.Supp. 824, 828 (S.D.Ga.1981), *aff'd,* 710 F.2d 731 (11th Cir.), *cert. denied,* 464 U.S. 964, 104 S.Ct. 402, 78 L.Ed.2d 343 (1983) (emphasis in original).

**5.** 18 U.S.C. § 1029(a)(3) provides in pertinent part:

> (a) Whoever—
>
> (3) knowingly and with intent to defraud possesses fifteen or more devices which are counterfeit or unauthorized access devices;
>
> shall, if the offense affects interstate or foreign commerce, be punished as provided in subsection (c) of this section.

**6.** 18 U.S.C. § 1341 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or

for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

**7.** 42 U.S.C. § 408(g)(2) provides in pertinent part:

> Whoever—
>
> (g) for the purpose of causing an increase in any payment authorized under this subchapter (or any other program financed in whole or in part from Federal funds), or for the purpose of causing a payment under this subchapter (or any such other program) to be made when no payment is authorized thereunder, or for the purpose of obtaining (for himself or any other person) any payment or

was not indicted within thirty days of arrest was the reassignment of the case from one assistant United States attorney to another who was not in a position to assume immediate responsibility for the prosecution. Indeed, the Government conceded that it could not even be certain that the original charges of credit card fraud against Giwa had been dismissed.[8] Nevertheless, despite the Government's somewhat negligent management of Giwa's prosecution, we are bound by the explicit statutory language of section 3162(a)(1) requiring dismissal of only those offenses contained in the original complaint. The offenses for which Giwa was arrested and indicted, while arising from the same criminal transaction, are separate and distinct offenses each requiring proof of different elements; therefore, the "gilding" exception does not apply and section 3162(a)(1) bars prosecution of only the initial offense charged, the charge of credit card fraud.

In sum, the Speedy Trial Act was intended to ensure the prompt administration of justice for criminal defendants. One of the primary vehicles created by Congress to achieve that goal was the strict adherence to specific time limitations set forth in the Act, such as that in section 3161(b) requiring the Government to indict a defendant within thirty days of arrest. Even so, the instant case falls through the cracks of the protective walls erected by the Speedy Trial Act. The Government prosecutors did not indict Giwa within thirty days of arrest and offer no plausible justification for their delay. Nevertheless, the clear mandate of

section 3162(a)(1) requires dismissal of only those charges contained in the original complaint. The charge against Giwa in the original complaint was credit card fraud. Thus, we are constrained to conclude that the Act does not bar prosecution of Giwa for mail fraud and the use of a false social security number. We, therefore, affirm the district court's denial of Giwa's motion to dismiss.[9]

### B. *Validity of the Search*

Giwa further asserts that the district court erred when it found that "the search of Giwa's bag was not inconsistent with the demands of the fourth amendment." Giwa argues that his status as a visitor to Aruya's apartment insulated him and his belongings from a search by the authorities pursuant to the premises search warrant. In response, the Government seeks to justify the search of Giwa's bag on the basis that the search was legitimately within the scope of the search warrant for the apartment. Alternatively, the Government asserts that Giwa effectively consented to the search of his bag when he indicated to the officers that his identification was in the bag and that the bag was in the closet. Because we find that the search of the bag was within the scope of the search warrant, we do not address the issue of consent.

We begin with the proposition that "any container situated within residential premises which is the subject of a validly-issued warrant may be searched if it is reasonable to believe that the container could conceal

---

8. During oral argument, the Government admitted that the only reason it did not pursue the charges of credit card fraud was the fact that 30 days had elapsed from Giwa's arrest.

9. Giwa further asserts that the Government's delay in obtaining an indictment violated his fifth amendment right to due process and his sixth amendment right to a speedy trial. Since we cannot perceive that the Government intentionally delayed indicting Giwa to gain a tactical advantage or that Giwa incurred actual prejudice as a result of the delay, we reject these claims. *United States v. Ballard*, 779 F.2d 287, 293 (5th Cir.), *cert. denied*, 475 U.S. 1109, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986); *United States v. Amuny*, 767 F.2d 1113, 1119 (5th Cir.1985).

any other benefit to which he (or such other person) is not entitled, or for the purpose of obtaining anything of value from any person, or for any other purpose—

.    .    .    .    .

(2) with intent to deceive, falsely represents a number to be the social security account number assigned by the Secretary to him or to another person, when in fact such number is not the social security account number assigned by the Secretary to him or to such other person;

.    .    .    .    .

shall be guilty of a felony and upon conviction thereof shall be fined not more than $5,000 or imprisoned for not more than five years, or both.

items of the kind portrayed in the warrant." *United States v. Gray*, 814 F.2d 49, 51 (1st Cir.1987). *See also United States v. Ross*, 456 U.S. 798, 820–21, 102 S.Ct. 2157, 2170–71, 72 L.Ed.2d 572 (1982); *United States v. Eschweiler*, 745 F.2d 435, 439 (7th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1188, 84 L.Ed.2d 334 (1985). In the instant case, the search warrant authorized the secret service agents to search for "credit cards, financial records and personal identification used in the fraudulent obtaining and use of credit cards, and any merchandise obtained by such use of fraudulent credit cards." A flight or travel bag is clearly a container where the above evidence might be found. Nevertheless, as has been noted by other courts, special concerns arise when the items to be searched belong to visitors, and not occupants, of the premises. *Gray*, 814 F.2d at 51. *See also United States v. Branch*, 545 F.2d 177 (D.C.Cir.1976); *United States v. Micheli*, 487 F.2d 429 (1st Cir.1973); *United States v. Johnson*, 475 F.2d 977 (D.C. Cir.1973). Such searches may become personal searches outside the scope of the premises search warrant requiring independent probable cause.

Surprisingly, very few courts have addressed this issue and of those which have, the analyses applied have been inconsistent. In *United States v. Teller*, 397 F.2d 494 (7th Cir.), *cert. denied*, 393 U.S. 937, 89 S.Ct. 299, 21 L.Ed.2d 273 (1968), the Seventh Circuit upheld the search of a woman's purse executed pursuant to a valid search warrant of the premises, where the woman had placed her purse on a bed during the search. In doing so, the *Teller* court adopted an analysis which focused primarily on whether the purse was in the actual physical possession of the woman at the time of the search. The rationale of the *Teller* court was applied in *United States v. Johnson*, 475 F.2d 977, where the search of a purse which was not in the possession of the owner at the time of the search was upheld on the basis of a premises search warrant. In *Johnson*, the search of the woman's purse was upheld despite the fact that the officers knew prior to their entry that the woman was a visitor on the premises. The court reasoned that the purse was not being worn by the woman and thus did not constitute "an extension of her person so as to make the search one of her *person*." *Id.* at 979 (emphasis in original). *See also United States v. Branch*, 545 F.2d 177 (ruling that the search of a shoulder bag on the premises was not permissible where the owner was unknown to the police, carried the bag suspended from his shoulder, and entered the apartment during the course of the premises search).

Other courts have approached the issue of the presence of visitors during the execution of a premises search warrant by focusing primarily on the relationship between the person whose personal effects are searched and the place which is the subject of the search. *Gray*, 814 F.2d at 51; *Micheli*, 487 F.2d at 431. In *Micheli*, the court criticized the *Teller* approach as too narrow in that it would leave vulnerable personal effects, which are often placed upon chairs or counters, hung on racks, or checked for convenient storage. *Micheli*, 487 F.2d at 431. The *Micheli* court, although upholding the search of a briefcase on the premises, based its decision on the fact that the individual whose items were seized was not a mere visitor to the premises, but instead, as co-owner of those premises, was in a special relation to the place such that it could reasonably be expected that some of his personal belongings would be there. Most recently, the First Circuit upheld the search of a visitor's jacket pursuant to a premises search warrant where the visitor was "discovered in a private residence, outside of which a drug deal had just "gone down," at the unusual hour of 3:45 a.m." *Gray*, 814 F.2d at 51. In doing so, the *Gray* court followed *Micheli* and focused on the relationship between the person and the place. *Id.*

In the instant case, we agree with the district court's conclusion that mere physical possession should not be the sole criterion which should be used to determine whether a personal item may be searched pursuant to a premises search warrant. We believe that the better approach is that

adopted in *Micheli* and *Gray* which examines the relationship between the person and the place. Thus, we must examine Giwa's relationship to Aruya's apartment as the agents perceived it when they executed the search warrant. In answering this query, we do not agree with the district court's finding that Giwa was merely a "casual visitor" to the apartment. Giwa was an overnight visitor to Aruya's apartment. Additionally, at the time the agents arrived at the apartment, Giwa had been sleeping and answered the door clad only in a bathrobe and slacks, apparel indicating that his was more than just a temporary presence in the apartment. Finally, Giwa was discovered alone in a private residence. These facts support the conclusion that Giwa was not a "mere visitor" or "passerby" and thus, the agents could reasonably believe his flight bag contained evidence of credit card fraud. Therefore, the search of Giwa's bag by the agents in an effort to retrieve Giwa's identification was within the scope of the premises search warrant.

## III. CONCLUSION

The district court did not err in denying Giwa's motion to dismiss the indictment as Giwa was arrested for credit card fraud, but indicted for entirely different offenses, mail fraud and the use of a false Social Security number. Despite the fact that Giwa's indictment was not returned within thirty days of his arrest, section 3162(a)(1) only requires dismissal of those charges contained in the original complaint. Since the charges of mail fraud and use of a false Social Security number were not contained in the original complaint, Giwa's motion to dismiss was properly denied. Furthermore, Giwa's bag fell within the scope of the search warrant for Aruya's apartment because of Giwa's relationship to that location which was more than a "mere visitor" or "passerby." Therefore, having rejected each of Giwa's contentions, we affirm the judgment of the district court.

AFFIRMED.