**REVISED**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No.  95-50254

UNITED STATES OF AMERICA

Plaintiff-Appellee

VERSUS

JIMMY C. BAILEY

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas

April 25, 1997

Before DAVIS and DUHÉ, Circuit Judges, and Dowd,[1] District Judge.

JOHN M. DUHÉ, JR., Circuit Judge:

Appellant Jimmy C. Bailey challenges his conviction on multiple counts related to his breaking and entering into the homes of Vicki LaShawn Griffin[2] and Michelle Joshua, residents on the Fort Hood Military Reservation.  For reasons that follow, we

---

[1]District Judge of the Northern District of Ohio, sitting by designation.

[2]At the time of trial, Griffin was using the name Vicki LaShawn Armstrong.  Because she was known as Vicki LaShawn Griffin during the events in question, we will refer to her as Griffin.

affirm.

**BACKGROUND**

Count 1 of the indictment charges Bailey with the aggravated sexual abuse of Griffin, in violation of 18 U.S.C. §§ 2241(a)(1) and 2245; count 2 charges Bailey under theAssimilative Crimes Act 18 U.S.C. § 13, with the burglary of Griffin's habitation with intent to commit aggravated sexual assault, sexual assault, and aggravated sexual abuse, in violation of Tex. Pen. Code §§ 22.011, 22.021, 30.02, and 18 U.S.C. § 2241(a)(1); count 3 charges Bailey under the Assimilative Crimes Act, with burglary of Joshua's habitation with intent to commit aggravated sexual assault, sexual assault, aggravated sexual abuse, and theft, in violation of Tex. Pen. Code §§ 22.011, 22.021, 30.02, and 18 U.S.C. § 2241(a)(1); count 4 charges Bailey with receipt of a stolen firearm valued at more than $100, in violation of 18 U.S.C. § 662.

The acts alleged in counts 1 and 2 arose out of an incident occurring in Griffin's home on the Fort Hood military base in Texas.[3] In the pre-dawn hours of May 25, 1992, Griffin, a Staff Sergeant in the United States Army, awoke to being choked by a man she later identified as Bailey. As he was choking her, Bailey placed his hand in Griffin's underwear and inserted his finger into her vagina. Griffin pushed Bailey away, screamed for help, and asked Bailey to leave her alone. Bailey left but then returned,

---

[3]Fort Hood, an United States military reservation, is a federal enclave as defined in 18 U.S.C. § 7, the basis for which the Assimilative Crimes Act applies.

and Griffin again pleaded for her safety.  This time, Bailey left and did not return.

Griffin, having observed her attacker in the bright hallway light while he stood in her bedroom doorway, described him as a five foot ten or eleven inches tall, light-skinned, Hispanic male with hair close to his head and a light mustache, and clothed only in light blue hospital pants and white canvas shoes.[4]  Although a police sketch was made, Bailey was not identified as Griffin's attacker until some months later when Griffin spoke with Staff Sergeant Yvette Smalls about a similar attack on Smalls.  That conversation led Griffin to a high school yearbook containing Bailey's photo, by which she identified Bailey as her attacker.  Griffin identified Bailey again in three subsequent photo line-ups.

Counts 3 and 4 of the indictment are based upon an incident that occurred on August 25, 1993, in the home of Michelle Joshua.  Joshua, who lived alone on the Fort Hood base, was sleeping on her couch when she awoke in the pre-dawn morning because she felt that someone had pulled her toe.  Awake, she began watching television but was interrupted by "a bumping sound."  Joshua arose from the couch, turned around, and saw a man in one of the bedrooms emerging from a closet.  He wore a ski mask and dark-colored pants but no shirt.  Joshua screamed and ran to a neighbor's house to call the police.  When the police arrived, Joshua informed them that a foreign car she believed belonged to the intruder was parked at the

---

[4]Griffin testified that at the time of trial, Bailey looked heavier and had more hair on his head and under his chin than he had had at the time of the attack.

end of her driveway. Upon investigation, the police found a black ski mask on the back seat of the car and a Ruger nine millimeter pistol and two magazines in the trunk. The car belonged to one of Bailey's parents. When Joshua later returned to her house, she found nothing missing but noticed that the closet was "messed up." The police later discovered that the pistol found in Bailey's trunk belonged to a mechanic on Fort Hood, who had reported it stolen in June 1993.

When questioned, Bailey initially denied entering Joshua's home but admitted to having been in the area. He then changed his story and confessed to entering Joshua's residence but claimed he did not know why he had done so. Bailey also acknowledged he owned a ski mask that he wore "for fun." He denied having worn the mask in Joshua's home, however. He also stated that he had bought the gun found in his car with full knowledge that it was stolen.

Bailey was convicted by a jury on all counts.

## DISCUSSION

Bailey argues that (1) the district court erred in admitting evidence of an extrinsic offense; (2) the evidence is insufficient to convict him on the burglary charge (count 3); (3) the district court erred in denying his motion to dismiss counts 3 and 4 for alleged violations of the Speedy Trial Act; and (4) the district court erred in refusing to instruct the jury on the lesser included offense of criminal trespass. We are unpersuaded by Bailey's arguments.

I.

4

The district court, under Fed. R. Evid. 404(b), admitted evidence of Bailey's attack on Smalls only to demonstrate Bailey's intent and identity in committing the burglaries charged in counts 2 and 3. The 404(b) evidence showed the following: On November 22, 1991, Smalls was awakened before sunrise when her touch-sensitive bedside lamp came on, and found a stranger standing in her bedroom doorway. Alarmed, Smalls asked the intruder his identity. The intruder did not respond and instead sat down on Smalls's bed while Smalls was still in it. He informed Smalls that he was coming to visit a previous occupant who had given him unrestricted access. He failed to identify this person, however, and did not leave Smalls's home despite the realization of his purported mistake. Although Smalls asked him to leave, he refused. Eventually, the intruder told Smalls, without revealing his name, that he was a football player at Killeen High School. Four to six hours after his entry into Smalls's home, during which time he constantly guarded Smalls for fear she would call the police, the intruder finally left. As he was leaving, the intruder pulled Smalls towards him, pushed her up against the wall, and grabbed her breast and crotch. When she screamed, he ran out. Thereafter, Smalls examined photographs of high school football teams in Killeen and identified Bailey as her attacker.

During an interview conducted two days after the incident, Bailey admitted that he had entered Smalls's home uninvited, that he had stayed some length of time, that he had seen her breasts, and that he had asked Smalls to have sex with him. He denied

5

grabbing Smalls's breasts or vaginal area, however, but conceded he may have brushed up against her chest.

Bailey maintains that the admission of this evidence is not relevant to the charged burglary offenses and that its prejudicial effect outweighs its probative value. We disagree.

The decision to admit or exclude extrinsic evidence is subject to reversal only upon a clear showing of an abuse of discretion. See United States v. Sanchez, 988 F.2d 1384, 1393 (5th Cir. 1993); United States v. Peden, 961 F.2d 517, 521 (5th Cir. 1992). Rule 404(b) provides, in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

This Court has established a two-prong test that governs the admissibility of Rule 404(b) evidence. See United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978) (en banc). First, the evidence must be relevant to an issue other than the defendant's character. Second, the probative value of the evidence must not be substantially outweighed by its undue prejudice and the evidence must meet the other requirements of Rule 403. See id.; United States v. Williams, 957 F.2d 1238, 1243-44 (5th Cir. 1992). We conclude that both prongs are satisfied, and that the evidence was therefore properly admitted.

A.

The Government contends that the evidence of Bailey's attack

6

on Smalls is relevant to show identity and intent, both of which Bailey disputed at trial.  Extrinsic offense evidence is relevant to an issue other than the defendant's character only if the jury can reasonably conclude that the extrinsic act occurred and that the defendant was the actor.  See Huddleston v. United States, 485 U.S. 681, 689 (1988); see also Beechum, 582 F.2d at 912-13 (rejecting standards developed in United States v. Broadway, 477 F.2d 991 (5th Cir. 1973), for establishing relevance; and adopting more lenient test).  Evidence of Bailey's attack on Smalls is therefore relevant to identity and intent under the Government's theory only if the jury could reasonably find that (a)  Bailey himself entered Smalls's home; and (b)  he did so with the intent to commit aggravated sexual assault, sexual assault, and aggravated sexual abuse.  See Beechum, 582 F.2d at 913.

The Government proved that Bailey was the perpetrator of the crime against Smalls.  Indeed, Bailey admitted to having been in Smalls's home without invitation the night of the offense.  The jury thus could reasonably find that Bailey was Smalls's attacker. Evidence of Smalls's attack is therefore clearly relevant to the issue of identity.  We are also convinced that the 404(b) evidence is relevant to the issue of intent but pretermit any discussion of that issue as unnecessary in light of the holding regarding identity.

### B.

Although relevant, the evidence may nonetheless be excluded if its probative value is substantially outweighed by the danger of

unfair prejudice.  See id. at 911 (citing Fed. R. Evid. 403).

1.

In determining the probity of 404(b) evidence, the test to be applied varies depending on the issue for which the evidence is offered.  See id. at 911 n.15.  Where 404(b) evidence is introduced to establish identity, the crucial consideration is the similarity of the extrinsic and charged offenses, but the degree of similarity must be much greater than that for intent.  See id. at 911-12 n.15; see also United States v. Lail, 846 F.2d 1299, 1301 (11th Cir. 1988).  "The physical similarity [between the offenses] must be such that it marks the offenses as the handiwork of the accused. In other words, the evidence must demonstrate a modus operandi." Beechum, 582 F.2d at 911-12 n.15 (citation omitted).  The Government maintains that the evidence shows  that there were substantial similarities among the three incidents.  All three took place uninvited in the homes of single women living on Fort Hood; all occurred during pre-dawn hours; and each victim was physically touched in some way without consent, two of whom were touched while they were sleeping.  Bailey correctly points out that the facts that the women were all single and were physically touched in some way while they were sleeping is not compelling because these are characteristics shared by a number of sexual assaults.  However, the location and timing of each intrusion--Fort Hood during pre-dawn hours--is of signature quality.  Cf. Sanchez, 988 F.2d at 1394 (recognizing that similarity of locale of extrinsic and charged offenses is one factor relevant in determining probity of extrinsic

offense in identity inquiry), superseded by statute on other grounds, as stated in 890 F. Supp. 764, 767 (W.D. Wis. 1995). The circumstances of the extrinsic offense were therefore sufficiently similar to those of the charged offense for Rule 404(b) purposes.

2.

Our conclusion that the extraneous-act evidence is probative does not end our inquiry. We must balance the probative value of this evidence with its prejudicial effect. See Fed. R. Evid. 403. A review of the record satisfies us that the probity of this evidence was not substantially outweighed by its undue prejudice. Any potential undue prejudice was mitigated by the limiting instructions given by the court to the jury.[5] Cf. Beechum, 582

_____

[5]Before the Government submitted the evidence, the court emphasized:

> Members of the Jury, evidence of this nature can be admitted for a very limited purpose. The limited purpose for which this testimony is going to be admitted is for you to consider it, if you wish, as to whether or not the Defendant had the intent to commit the acts alleged in the Indictment or when you're considering the identity of the person who committed the acts alleged in the Indictment, but only for those limited purposes.

After all testimony, the court reiterated:

> During this trial, you have heard evidence of acts of the Defendant which may be similar to those charged in the Indictment, but which were committed on other occasions. You must not consider any of this evidence in deciding if the Defendant committed the acts charged in the Indictment. However, you may consider this evidence for other, very limited, purposes.
>
> If you find beyond a reasonable doubt from other evidence in this case that the Defendant did commit the acts charged in the Indictment, then you may

9

F.2d at 917 & n.23 (recognizing that cautionary instructions to jury help palliate the prejudicial effect of extraneous-acts evidence). The remaining considerations under Rule 403 do not affect our conclusion; evidence of Bailey's attack of Smalls was unlikely to confuse the issues, mislead the jury, cause undue delay, or waste time. The court did not abuse its discretion, and the evidence was therefore properly admitted.

II.

Bailey next argues that there is insufficient evidence to support his conviction for burglary on count 3. He maintains the evidence does not establish that he entered Joshua's residence with intent to commit a felony--whether that felony is aggravated sexual assault, sexual assault, sexual abuse, or theft--because he neither sexually assaulted or abused Joshua nor stole anything. Because Bailey failed to move for a judgment of acquittal, we review only to determine whether there was a manifest miscarriage of justice. See United States v. Laury, 49 F.3d 145, 151 (5th Cir.), cert. denied, 116 S. Ct. 162 (1995). "Such a miscarriage of justice would exist only if the record is devoid of evidence pointing to

consider the evidence of the similar acts allegedly committed on other occasions to determine:  1) whether the Defendant had the state of mind or intent necessary to commit the crimes charged in the Indictment; 2) whether the circumstances of this uncharged act and the acts charged in the Indictment were so distinctive and similar as to establish the identity of the Defendant as the perpetrator of the acts charged in the indictment.

These are the limited purposes for which any evidence of other similar acts may be considered.

10

guilt, or . . . because the evidence on a key element of the offense was so tenuous that a conviction would be shocking." Id. (internal quotation marks omitted) (citation omitted).

Although the evidence of intent to commit the named sex offenses is not overwhelming, it is sufficient. The evidence revealed that Joshua awoke to find Bailey exiting a bedroom closet while wearing a ski mask. From the use of the mask alone, the jury could have found that Bailey sought to hide his identity and that therefore, his entry could not have been for innocent reasons. That Bailey entered surreptitiously in the dark, wore a ski mask, pulled on Joshua's toe, wore no shirt, and hid in the bedroom closet could have led a jury to believe that Bailey intended to commit aggravated sexual assault, sexual assault, or aggravated sexual abuse against Joshua.

Moreover, that Joshua's closet had been "messed up" and that books had been knocked out of their boxes could indicate to a jury Bailey's intent to commit theft. A non-consensual nighttime entry raises a presumption of intent to commit theft. See Mauldin v. State, 628 S.W.2d 793, 795 (Tex. Crim. App. 1982). Furthermore, the actual commission of theft is not a prerequisite to the commission of a burglary, see Gutierrez v. State, 666 S.W.2d 248, 250 (Tex. App.--Dallas 1984); Longoria v. State, 663 S.W.2d 649, 652 (Tex. App.--Corpus Christi 1983). It is therefore inapposite that Joshua discovered nothing missing once she returned to her residence. A conviction on these facts is not so shocking as to render it a miscarriage of justice.

11

III.

At trial, Bailey moved unsuccessfully to dismiss counts 3 and 4 of the indictment because of purported Speedy Trial Act violations, 18 U.S.C. §§ 3161(b) and 3161(c)(1). Bailey now challenges the district court's refusal to dismiss these counts as error. This Court reviews the facts supporting a Speedy Trial Act decision for clear error and the legal conclusions *de novo*. See United States v. Johnson, 29 F.3d 940, 942 (5th Cir. 1994).

On August 25, 1993, authorities arrested Bailey in connection with their investigation into the Joshua incident. The next day, the Government filed a misdemeanor information, charging Bailey with (1) possession of stolen property, a handgun, valued at less than $100, in violation of 18 U.S.C. § 662, and (2) entering a military reservation for the purpose of committing an act prohibited by law, in violation of 18 U.S.C. § 1382. On August 27, 1993, Bailey first appeared before the magistrate on the misdemeanor charges. On November 3, 1994, the government dismissed the misdemeanor information because two days earlier, it had filed the felony indictment that forms the basis for the instant action.

A.

Bailey first maintains that 18 U.S.C. § 3161(b) requires the dismissal of counts 3 and 4 of the indictment since he was not charged within 30 days following his initial arrest on August 25, 1993. For the reasons below, we find this argument unavailing.

1.

This Court has adopted a narrow construction of the Act's

dismissal sanction.  See United States v. Giwa, 831 F.2d 538, 541–

43 (5th Cir. 1987).  In Giwa, we held that the government's failure

to indict a defendant within thirty days of his arrest on one

charge does not start the speedy trial clock as to other charges

subsequently filed.  See id. at 542.  "[T]he clear mandate of §

3162(a)(1) requires dismissal of only those charges contained in

the original complaint" or other original accusatory instrument.

Id. at 543; see also United States v. Napolitano, 761 F.2d 135, 137

(2d Cir. 1985).  Guided by Giwa, we cannot hold in Bailey's favor.

For purposes of the Speedy Trial Act, Bailey was arrested for two

misdemeanor counts and indicted for four entirely different

offenses, all felonies.[6]  That more than thirty days elapsed

between Bailey's arrest on the *misdemeanor* counts and his

---

[6]Bailey's citation to United States v. Polomba, 31 F.3d 1456 (
9th Cir. 1994) is unavailing.  In that case, the Government filed
three accusatory instruments.  Id. at 1463.  The original complaint
and the untimely superseding indictment each raised two mail fraud
counts charging violations of 18 U.S.C. § 1341.  Id.  The
instruments differed as to those counts only insofar as the
superseding indictment identified mailings, misrepresentations, and
fraudulent acts not specified in the original complaint.  Id.  The
court held that under these facts, the Speedy Trial Act mandates
dismissal of the mail fraud counts untimely raised in the
superseding indictment because such counts "repeated *charges* (*i.e.*,
counts alleging violation of a particular statute) stated in the
complaint over thirty days before, despite being based perhaps on
wholly or partially discrete *offenses* (*i.e.*, acts in violation of
the same or different criminal statutes or laws) within the same
criminal scheme."  Id. at 1463.
  Seizing upon this language, Bailey suggests his case presents a
factually analogous situation.  We disagree.  Admittedly, the
information and indictment in the instant action each charge a
violation of § 662.  But unlike the situation in Polomba, each
charge in the instant action is different despite the shared
reference to § 662 because the information charges a misdemeanor
and the indictment charges a felony.

indictment on the *felony* charges does not implicate the dismissal sanction under § 3162(a)(1).[7]

2.

This Court has recognized one exception to the general rule. Where "a subsequent charge merely 'gilds' the initial charge filed against an individual and the different accusatorial dates between the two charges are not reasonably explicable," this Court has held that "the date of the initial arrest may trigger the applicable time periods of the Act as to prosecution for both offenses." Giwa, 831 F.2d at 542 (citations omitted). Webster's Third New International Dictionary defines gilding as "embellishing." Webster's Collegiate Dictionary defines it as "unnecessary ornamentation." See United States v. Oliver, 683 F. Supp. 35, 38 (E.D.N.Y. 1988) (citing Webster's Collegiate Dictionary). Thus, a gilded charge is one that merely annotates in more detail the same charge alleged in the initial accusatory instrument--here, the misdemeanor information. See, e.g., United States v. Bilotta, 645 F. Supp. 369, 371 (E.D.N.Y. 1986) (holding that addition of certain factual allegations in superseding indictment did not change fact that actual crime charged was same as that charged in original

---

[7] Bailey maintains that because his initial arrest stemmed from the Joshua burglary investigation and because the booking sheet and military police report from his initial arrest both list burglary as one of the charges, the burglary count made the subject of count 3 of the indictment must be dismissed pursuant to § 3161(b). We disagree. A defendant is not "arrested" for purpose of the Speedy Trial Act until formal charges are filed. See United States v. Sanchez, 722 F.2d 1501, 1509 (11th Cir. 1984). That the burglary charge is listed on the military police report and the booking sheet, therefore, does not mean that the speedy trial clock had been implicated.

14

complaint and therefore subject to dismissal), <u>cited in</u> <u>Oliver</u>, 683 F. Supp. at 39.

This view comports with Supreme Court precedent analyzing multiple prosecutions.  <u>See</u> <u>United States v. Dixon</u>, 509 U.S. 688, 696 (1993) (evaluating multiple prosecutions under principles of double jeopardy).  The Court views different charges as the same if they are composed of the same elements.  This "same-elements test, sometimes referred to as the '<u>Blockburger</u>' test, inquires whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution."  <u>Id.</u>

Bailey's strongest claim under § 3161(b) is his allegation that count 4 of the indictment merely gilds count 1 of the information because the charges alleged in each differ only as to the valuation of the firearm, a difference Bailey contends is insignificant for purposes of the Speedy Trial Act.  Although this Court has never addressed this precise question, it has explained that "where an offense that is otherwise a misdemeanor becomes a felony if committed in a certain way or with certain consequences, the particular attribute that makes it a felony is an element of the offense, which must be alleged in the indictment and proved at trial."  <u>United States v. Deisch</u>, 20 F.3d 139, 147 (5th Cir. 1994). Citing its application of this rule to 18 U.S.C. § 659 (theft of shipments in commerce) and § 641 (theft of property of the United States), in each of which the offense is a misdemeanor if the value of the stolen property does not exceed $100, and is otherwise a

15

felony, this Court noted in Deisch that "a value of $100 or more is an element of the felony that must be alleged and proved." Id. (citations omitted). Taking guidance from Dixon and Deisch, we hold that count 4 of the indictment does not gild count 1 of the misdemeanor information because the misdemeanor count and the felony count each contains different elements, *viz.*, the valuation of the weapon.

That both charges involve the same handgun discovered during the same investigation of the same criminal act does not compel the opposite conclusion. Legislative history reveals that "Congress considered and rejected [the] suggestion that the Act's dismissal sanction be applied to subsequent charges if they arise from the same criminal episode as those specified in the original complaint or were known or reasonably should have been known at the time of the complaint." Napolitano, 761 F.2d at 137; accord United States v. Hausman, 894 F.2d 686, 688 (5th Cir. 1990) ("Whether the conviction arose from the same conduct as charged in the arrest warrant and complaint is immaterial." (citation omitted)). The charges in the information and counts 3 and 4 of the indictment are distinct for Speedy Trial Act purposes and therefore dismissal is unwarranted.

B.

Bailey next maintains that count 4 of the indictment should have been dismissed because his trial was not held within 70 days of his initial appearance before a magistrate judge. Section 3161(c) requires an individual to be tried within 70 days of the

16

"filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date occurs last." 18 U.S.C. § 3161(c)(1). Bailey argues that his first appearance before a judicial officer on August 27, 1993, triggered the speedy trial clock. The Government counters that the speedy trial clock did not begin to run until November 1, 1994, when Bailey's previously sealed indictment was made public upon his arrest. We agree.

The August appearance was related to Bailey's misdemeanor information and not to his felony indictment, which forms the subject of the instant action. As we have already discussed, the charges alleged in the indictment are distinct from those in the earlier misdemeanor information for purposes of the Speedy Trial Act. The 70-day time bar therefore did not begin to run until November 1, 1994, the date upon which Bailey's indictment was unsealed. We conclude that Bailey's trial was well within the statutory period.[8]

IV.

Bailey further claims the district court's refusal to instruct the jury on criminal trespass as a lesser included offense of burglary was error. Count three of the indictment charges Bailey

---

[8]Actually, ninety-seven days had elapsed between the time the indictment was unsealed (November 1, 1994) and the date the trial began (February 7, 1995). Many of these delays, however, were excludable for speedy-trial purposes under 18 U.S.C. § 3161(h). See United States v. Johnson, 29 F.3d 940, 942-43 (5th Cir. 1994); United States v. Ortega-Mena, 949 F.2d 156, 158-89 (5th Cir. 1991).

with violation of Texas law under the Assimilative Crimes Act, 18 U.S.C. § 13, which was intended "to provide a set of criminal laws for federal enclaves by the use of the penal law of the local state 'to fill the gaps in federal criminal law.'" United States v. Brown, 608 F.2d 551, 553 (5th Cir. 1979) (citation omitted). Without deciding whether a lesser included offense instruction should be defined in this case by federal or state law, we hold that under either test, the instruction requested by Bailey at trial is unwarranted.

A defendant is entitled to a lesser included offense instruction under federal law when (1) the elements of the lesser offense constitute a subset of the elements of the charged offense, see Schmuck v. United States, 489 U.S. 705, 716 (1989) (interpreting Fed. R. Crim. P. 31(c)); United States v. Krout, 66 F.3d 1420, 1431 (5th Cir. 1995); cert. denied, 116 S. Ct. 963 (1996), and (2) the evidence at trial is sufficient to allow a reasonable jury to find the defendant guilty of the lesser offense, yet to acquit him of the greater, see Keeble v. United States, 412 U.S. 205, 208 (1973), cited in Schmuck, 489 U.S. at 716 n.8.

Texas employs a different test to determine the necessity of a lesser included offense instruction:  (1)  proof of the lesser offense must be included within the proof necessary to establish the offense charged; and (2)  there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense.  See White v. State, 698 S.W.2d 494, 495 (Tex. App.--Corpus Christi 1985); Daniels, 633 S.W.2d 899, 901 (Tex.

18

Crim. App. [panel op.] 1982).

The elements of the offense of criminal trespass, Tex. Penal Code § 30.05, are: (1) a person (2) without effective consent (3) enters or remains on the property or in a building of another (4) knowingly or intentionally or recklessly (5) when he had notice that the entry was forbidden or received notice to depart but failed to do so. See Daniels v. State, 633 S.W.2d at 901 (citation omitted). The elements of the offense of burglary, Tex. Penal Code § 30.02, are: (1) a person (2) without the effective consent of the owner (3) enters a habitation or a building not then open to the public or remains concealed (4) with the intent to commit a felony or theft. See Day v. State, 532 S.W.2d 302, 304 (Tex. Crim. App. 1975).

While the first prong of the federal and Texas tests are different, the second prong of the two tests are substantially the same: Unless the evidence permits a jury to conclude that the defendant is guilty of the lesser offense and innocent of the greater offense, the lesser offense instruction need not be given. A defendant's testimony alone is sufficient to raise an issue on the second prong. For Bailey to prevail, therefore, he must show that the evidence permits a reasonable jury to find that he entered Joshua's home without the intent to commit aggravated sexual assault, sexual assault, aggravated sexual abuse, or theft as charged in count 3.

We are not persuaded that the record permits a finding that if Bailey is guilty of any crime, he is guilty of only the lesser

19

offense. Bailey presented no evidence concerning his mental state at the time he entered Joshua's residence, and he did not testify at trial. The jury was also entitled to rely on the Rule 404(b) evidence of Bailey's earlier similar acts of burglary and sexual assault as evidence of his intent to assault Joshua. Moreover, Bailey's statement to the military police regarding the Joshua incident, admitted into evidence, was hardly exculpatory of a criminal intent. In that statement, Bailey claimed he did not know why he had entered Joshua's home. This evidence, which is the only evidence Bailey offers for his position, is not enough to show that if Bailey is guilty, he is guilty only of the lesser offense of criminal trespass.

Under these facts, we cannot hold that the evidence raises the issue of the lesser included offense of criminal trespass.

The district court's refusal to so instruct was therefore not in error.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.