**UNITED STATES OF America,**
**Plaintiff,**

v.

**Amado BAILON–CRUZ, Tomas Bailon–Flores, Leonardo Moctezuma–Castro, Santiago Sagal–Lara, Carlos Nunez–Zubiate, Defendants.**

**No. CR. 04–CR–266–RB.**

United States District Court,
D. Colorado.

Nov. 15, 2004.

Stephen M. Wheeler, Wheeler Law Offices, PC, Evergreen, CO, for Defendants.

Joseph Mackey, United States Attorney's Office, Denver, CO, for Plaintiff.

## ORDER CONCERNING DEFENDANTS' MOTIONS TO DISMISS THE SUPERSEDING INDICTMENT

BLACKBURN, District Judge.

This matter is before me on the following motions: 1) defendant Carlos Nunez–Zubiate's motion to dismiss [# 43], filed July 7, 2004; and 2) defendant Carlos Nunez–Zubiate's motion to dismiss the superseding indictment [# 96], filed August 18, 2004. Defendants Bailon–Cruz, Bailon–Florez, Sagal–Lara, and Moctezuma–Castro have joined in both motions. For the reasons discussed below, the first motion is denied, and the second is granted.

### I. MOTION TO DISMISS INDICTMENT

In the July 7, 2004, motion to dismiss, the defendants argue that the initial indictment, returned June 22, 2004, must be dismissed because it was not returned within 30 days of their arrest on May 14, 2004. The government argues that the 30 day time period did not begin to run on May 14th. Rather, the government argues that the 30 day time limit began to run when a criminal complaint was filed against the defendants on May 24, 2004, less than 30 days before the indictment was returned.

## A. Findings of Fact

These findings of fact are based on the testimony heard and the exhibits admitted into evidence at the September 21, 2004, hearing on the motion to dismiss the indictment. On May 14, 2004, Immigration and Customs Enforcement (ICE) agents developed information that counterfeit identity documents were being manufactured at three specific locations in the Denver area. The investigation of these counterfeit document operations is referred to as the Acapulcos investigation. In the course of the Acapulcos investigation, ICE agents discovered that each of the defendants is a Mexican citizen who is present in the United States illegally. The defendants were arrested by ICE agents on May 14, 2004. After their arrests, the defendants were detained at an ICE detention facility. A Record of Deportable/Inadmissable Alien, also known as form I–213, was prepared for each defendant shortly after their arrest on May 14, 2004. *Exhibits 3a—3e.* An I–213 is the form routinely completed when an individual is arrested because he is an illegal alien. The administrative procedures necessary to remove the defendants from the country were pursued following their arrest. *Exhibits 1a—1e; 2a—2e.*

At the time of the defendants' arrests, the ICE agents noted each defendant's suspected involvement in the counterfeit documents operations. This suspected involvement was indicated on each defendant's I–213 form. *Exhibits 3a—3e.* Referring to Nunez–Zubiate, the arresting agent noted that Nunez–Zubiate "appears amenable to prosecution" on various charges, including the charges Nunez–Zubiate now faces in this case. *Exhibit 3a.* The agent said that Nunez–Zubiate "will be held without bond pending removal proceedings and prosecution on criminal charges." *Id.* Referring to Bailon–Cruz, the arresting agent described Bailon-

Cruz's suspected involvement in the fraudulent document organization, and said that "(c)riminal charges for the subject are pending." *Exhibit 3b.* Colunga-Flores' I–213 form includes a notation that "(p)rosection is being sought for his involvement in the fraudulent document case," and that he was being held for investigation of other criminal charges. *Exhibit 3c.* Montezuma–Castro's I–213 form includes a notation that "(c)riminal charges for the subject are pending in District Court subsequent to this investigation." *Exhibit 3d.* Finally, Sagal-Lara's I–213 form contains a notation that "(c)riminal prosecution is pending." *Exhibit 3e.*

Testimony at the September 21, 2004, hearing indicated that ICE officials can initiate civil removal proceedings, and they initiated such proceedings against each of the defendants. ICE officials do not have the authority to initiate criminal charges. Rather, a case must be presented to and accepted by the U.S. Attorney before criminal prosecution actually is initiated. *Transcript,* P. 62. ICE agent Greg Jensen testified that ICE agents generally use the term "pending" to indicate that they are preparing a potential criminal case for presentation to supervisors or the U.S. Attorney for a decision about initiating a prosecution. *Id.*

A criminal complaint was filed against the defendants on May 24, 2004. The complaint charged the defendants with various crimes related to the defendants' alleged production and possession of counterfeit documents. On June 22, 2004, an indictment was returned, charging the defendants with the same crimes.

I find that the that the primary purpose of the arrest and detention of the defendants on May 14, 2004, was to hold them for civil removal proceedings. The record indicates that the ICE agents determined

that the defendants were subject to removal, and that removal proceedings were initiated against each defendant. Of course, the ICE agents also knew that the defendants may be subject to criminal prosecution. However, a decision about whether or not to prosecute the defendants criminally was not made until further investigation and consultation with the U.S. Attorney's office was completed. The record does not support the conclusion that the primary or exclusive purpose of the defendants' May 14, 2004, arrests was to hold them for the prosecution of criminal charges. The fact that such charges were contemplated at the time does not mean that the primary or exclusive purpose of the defendants' arrests was the initiation of criminal charges.

### B. Conclusions of Law

■ The Speedy Trial Act provides that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). If the government does not comply with this time limit, the Act requires the dismissal of the charges. 18 U.S.C. § 3162(a)(1). The key issue here is whether the defendants' May 14, 2004, arrest triggered the 30 day time limit of § 3162(b). I conclude that the May 14, 2004, arrests did not trigger that time limit.

[A] person is not "arrested in connection with" a charge, within the meaning of section 3161(b) of the Speedy Trial Act, unless there is some coincidence of (1) a pending federal complaint and (2) federal custody based on that complaint. Under this rule, if a complaint is filed before federal arrest pursuant to that complaint, the Speedy Trial Act is triggered at the moment of arrest. If, on the other hand, a person is

arrested and kept in custody without a warrant, the Federal Rules of Criminal Procedure require a "complaint [to be] filed forthwith." Fed.R.Crim.P. 5(a). The Speedy Trial Act is triggered in that circumstance when the complaint is filed while the arrestee remains in custody for the offense charged in the complaint.

*U.S. v. Bagster* 915 F.2d 607, 611 (10th Cir.1990) (footnote omitted). Generally, civil detention by immigration authorities does not trigger the Speedy Trial Act's thirty day time limit. *See, e.g., U.S. v. Dyer,* 325 F.3d 464, 468 (3rd Cir.2003) (citing cases); *U.S. v. De La Pena–Juarez,* 214 F.3d 594, 598 (5th Cir.2000). However, if a civil detention is used primarily or exclusively to develop criminal charges against the person arrested, the time limits of the Speedy Trial Act begin running on the date of the civil arrest. *See De La Pena–Juarez,* 214 F.3d at 598 (citing cases). The use of a civil detention to develop criminal charges is referred to as the "ruse" exception. *Id.*

■ I have found that the defendants were subject to civil detention for removal proceedings on May 14, 2004, and that their detention was not used primarily or exclusively to develop criminal charges against the defendants. Again, the possibility of criminal charges was on the mind of the ICE agents, but such charges were not the primary or exclusive purpose of the detention. The ruse exception adopted by other circuits is not applicable to this case. Under the rule established by the Tenth Circuit in Bagster, the § 3161(b) deadline did not begin to run in this case until the complaint was filed against the defendants on May 24, 2004. The indictment was filed on June 22, 2004, less than 30 days after May 24, 2004, as required by § 3161(b).

## II. MOTION TO DISMISS SUPERSEDING INDICTMENT

The defendants argue that the superseding indictment, returned on July 26, 2004, must be dismissed under § 3161(b) because it was filed more than 30 days after their arrest. As discussed above, I find that the 30 day time period applicable to the initial indictment did not begin to run until May 24, 2004, when the complaint was filed against the defendants. The defendants also argue that the superseding indictment must be dismissed because it alleges new elements of the underlying offenses, and those new elements were improperly created by the United States Sentencing Commission.

### A. Findings of Fact

The defendants say a superseding indictment was returned on July 26, 2004. The superseding indictment was filed with the court on July 28, 2004. The superseding indictment does not add or remove any substantive charges. Rather, the superseding indictment adds Counts Seven, Eight, and Nine, which are captioned as "Offense Characteristics and Sentencing Allegations." Each of the newly alleged offense characteristics is tied to a specific provision of the United States Sentencing Guidelines (USSG). Each of the added counts refers to facts which, if proven, could increase a defendant's sentence by increasing the offense levels under the USSG.

Added Count Seven alleges that the offenses alleged in Counts One through Three involved substantially more than 100 counterfeit identification documents. This factual allegation is tied to USSG § 2L2.1. Counts One through Three are the same in the initial indictment and the superseding indictment.

Added Count Eight alleges that the firearm involved in Count Four, involving Moctezuma–Castro, had an obliterated serial number. This factual allegation is tied to USSG § 2K2.1(b)(4). Count Four is the same in the initial indictment and the superseding indictment.

Added Count Nine alleges that Counts Four, Five, and Six involved the possession of firearms in connection with another felony offense, referring to the offenses charged in Counts One through Three. This factual allegation is tied to USSG § 2K2.1(b)(4). Counts Four, Five, and Six are the same in the initial indictment and the superseding indictment.

[7] It appears that the impetus for the superseding indictment was the Supreme Court's decision in *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (June 24, 2004). Under *Blakely,* any fact, other than the fact of a prior conviction, "that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely,* —— U.S. at ——, 124 S.Ct. at 2536 (quoting *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). *Blakely* involved the statutory sentencing scheme in the state of Washington. Since *Blakely,* some have argued that facts supporting a sentence enhancement under the USSG, other than the fact of a prior conviction, must be submitted to a jury and proven beyond a reasonable doubt. Whether and how *Blakely* applies to the USSG is a question currently awaiting decision by the Supreme Court. *U.S. v. Booker,* 375 F.3d 508 (7th Cir.2004), *cert. granted,* —— U.S. ——, 125 S.Ct. 11, 159 L.Ed.2d 838 (2004).

### B. Conclusions of Law

The primary question here is whether the superseding indictment was timely filed under the strictures of the Speedy Trial Act. Again, § 3161(b) requires that "an indictment be filed within

thirty days from the date on which (the defendant) was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b).

As a general rule, new speedy trial act periods begin to run with respect to an information or indictment adding a new charge not required to be brought in the original indictment. However, when the later charge is merely a part of or only "gilds" the initial charge, the subsequent charge is subject to the same Speedy Trial Act limitations imposed on the earlier indictment.

*U.S. v. Andrews*, 790 F.2d 803, 808–09 (10th Cir.1986) (citations omitted). "[A] gilded charge is one that merely annotates in more detail the same charge alleged in the initial accusatory instrument." *U.S. v. Bailey*, 111 F.3d 1229, 1236 (5th Cir.1997). As an example of a gilded charge, *Bailey* cited a case involving a superseding indictment that merely added new supporting facts to the charge in the complaint. *Id.* (citing *United States v. Bilotta*, 645 F.Supp. 369, 371 (E.D.N.Y.1986)).

 In this case, the superseding indictment does not add new charges. Rather, it "merely annotates in more detail" the charges alleged in the original indictment. *Bailey*, 111 F.3d at 1236. Added Counts Seven through Nine are simply additional factual details related to the charges made in the initial indictment. The impulse to add these annotations to the indictment is readily understandable, in light of *Blakely*. However, this *Blakely* impulse has resulted in an annotation or gilding of the original indictment.

The superseding indictment in this case is a gilded indictment subject to the same Speedy Trial Act limitations applicable to the initial indictment. As noted above, the 30 day time limit of § 3161(b) began to run when the complaint was filed against the defendants on May 24, 2004. According to the defendants, the superseding indictment was returned on July 26, 2004, more than 30 days later. The superseding indictment was filed with the court on July 28, 2004. The superseding indictment must be dismissed as untimely. Because I conclude that the superseding indictment must be dismissed as untimely under § 3161(b), I do not address the defendants' other arguments concerning the superseding indictment.

## CONCLUSION

**THEREFORE IT IS ORDERED** as follows:

1) That defendant Carlos Nunez–Zubiate's motion to dismiss [# 43], filed July 7, 2004, is **DENIED;**

2) That defendant Carlos Nunez–Zubiate's motion to dismiss the superseding indictment [# 96], filed August 18, 2004, is **GRANTED;**

3) That the superseding indictment [# 84], filed July 28, 2004, is **DISMISSED;** and

4) That defendants Bailon–Cruz, Bailon–Florez, Sagal–Lara, and Moctezuma–Castro all have joined in defendant Carlos Nunez–Zubiate's motion to dismiss [# 43], filed July 7, 2004, and defendant Carlos Nunez–Zubiate's motion to dismiss the superseding indictment [# 96], filed August 18, 2004, and the rulings reflected in this order are applicable to the defendants who have joined in these motions.