**UNITED STATES of America, Plaintiff,**

v.

**William OLIVER, Carl Moore and James Scibelli, Defendants.**

**No. CR 87–00770.**

United States District Court,
E.D. New York.

April 5, 1988.

Andrew J. Maloney, U.S. Atty. by Dennis Milton, Asst. U.S. Atty., Brooklyn, N.Y., for plaintiff.

Martin M. Massel, Jr., Mineola, N.Y., for defendant Oliver.

Stephen P. Scaring, Mineola, N.Y., for defendant Scibelli.

Edward P. Jenks, Mineola, N.Y., for defendant Moore.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Defendants, recently indicted on charges stemming from their arrest pursuant to a criminal complaint filed in December of 1982, move to dismiss the pending indictment. Defendants' arguments are predicated on an alleged violation of the Speedy Trial Act, 18 U.S.C. § 3161(b) and the Due Process Clause of the Fifth Amendment to the United States Constitution. Notwithstanding the questionable conduct of the original Assistant United States Attorney assigned to this case, the Court holds that dismissal is not warranted by either ground urged by defendants. Accordingly, the motions to dismiss are denied.

## I. BACKGROUND

### A. *The 1982 Complaints and Arrests*

In December of 1982 defendants were arrested pursuant to criminal complaints dated December 15, 1982. The complaint against defendant Scibelli (the "Scibelli Complaint") charged him with knowingly and unlawfully possessing counterfeit currency in violation of 18 U.S.C. § 472. The Scibelli Complaint referred to and incorporated a second complaint against defendants Oliver and Moore (the "Oliver/Moore Complaint"). Like the Scibelli Complaint,

the Oliver/Moore Complaint charged the defendants named therein with the knowing and unlawful possession of counterfeit currency in violation of 18 U.S.C. § 472. In addition, Oliver and Moore were charged with the manufacturing of counterfeit currency in violation of 18 U.S.C. § 471. The Complaints alleged that defendants were involved in a counterfeiting operation that resulted in the manufacturing of approximately 1.7 million dollars in counterfeit currency.

One day after their arrests, defendants were arraigned and pled not guilty before the Honorable A. Simon Chrein, United States Magistrate. On August 17, 1983 defendant Scibelli moved to dismiss the complaint on both speedy trial and due process grounds. The basis for the motion was the government's failure to timely indict. On September 12, 1983 Magistrate Chrein issued a memorandum and order requiring the government to respond to Scibelli's motion by September 20, 1983. When the government failed to respond by the date set by the Magistrate a second order was issued. That memorandum, dated October 27, 1983, ordered dismissal with prejudice of the Scibelli Complaint unless the government submitted a memorandum by October 31, 1983 "indicating why the interests of justice would be strongly disserviced [by dismissal]." No such responsive memoranda was ever submitted and, as far as Scibelli and his codefendants were concerned, the government's case against them lay dormant for approximately the next four years.

### B. *The 1987 Indictment*

On November 30, 1987, just prior to the running of the applicable statute of limitations, a grand jury returned an indictment naming Scibelli, Moore and Oliver as participants in a counterfeiting operation. The time period of the alleged scheme is the same time period charged in the 1982 complaints, *i.e.,* November 18, 1982 through December 15, 1982. In terms of the crimes charged, however, the 1987 indictment differs from the 1982 complaints. Specifically, the present indictment contains five counts. Four of the five counts (counts one, two, four and five) name all defendants. Count three names only defendants Oliver and Moore.

Count One charges all three defendants with conspiracy, in violation of 18 U.S.C. § 371, to commit various counterfeit-related offenses including: the uttering and publishing of counterfeit currency, the possession of counterfeit currency, the buying, selling, exchange and transfer of counterfeit currency and the making and possession of a plate for use in the making of counterfeit currency. Count Two charges all three defendants with the making of false currency in violation of 18 U.S.C. § 471. Count Four charges all defendants with the wilful making of a plate with the intent that it be used to print counterfeit currency and Count Five charges all defendants with the knowing and unlawful possession of such plate in violation of 18 U.S.C. § 474. In Count Three defendants Oliver and Moore are charged with the knowing possession of counterfeit currency in violation of 18 U.S.C. § 472.[1]

### C. *The Pending Motion*

Each defendant has moved for dismissal of the complaint. In support of their motions, defendants cite both the Speedy Trial Act as well as the Due Process Clause of the Fifth Amendment to the Constitution. Each ground is discussed below in turn.

## II. DISCUSSION

### A. *Speedy Trial Act*

■ Section 3161(b) of the Speedy Trial Act (the "Act") requires that an information or indictment charging an individual with the commission of an offense be filed "within thirty days from the date on which such individual was arrested or served with a summons in connection with such

---

1. At oral argument on this motion the government indicated that it has consented to dismissal of Count Three. The dismissal is predicated on the fact that Count Three charges the same crime charged in the original complaint and, therefore, is clearly in violation of the Speedy Trial Act. *See United States v. Moore, Oliver, Scibelli,* CR 87–00770, Transcript of Motion before the Honorable Leonard D. Wexler, March 11, 1988 at 9.

charges...." 18 U.S.C. § 3161(b). The Act further provides that if no indictment or information is filed within the thirty-day period the criminal charge is to be "dismissed or otherwise dropped." 18 U.S.C. § 3161(d)(1). Although the Act sets forth several circumstances that extend the time in which the indictment or information must be filed, see 18 U.S.C. § 3161(h), none of those enumerated exclusions are at issue here.

Instead, the crux of this case lies in the specific language of the Act that requires only that *such* charge against the individual in *such* complaint be dropped. According to defendants, the charges set forth in the 1987 Indictment are the same, for Speedy Trial Act purposes, as those set forth in the 1982 Complaints. Defendants go on to argue that the failure of the government to file the indictment within thirty days of defendants' arrest on December 15, 1982 has violated the Act. Although defendants concede, as they must, that the 1987 Indictment charges the commission of crimes different from those set forth in the 1982 Complaints, defendants argue that the 1987 Indictment merely "gilds" the original charge and is thus subject to dismissal.

In addition to accepting written memoranda, the Court has twice held oral argument on this motion to probe further the issue of whether this case falls within defendants' gilding argument. The government has been unable to cite a case that defines the concept of gilding and has been able only to refer the Court to the definition found in Webster's Collegiate Dictionary. That definition states that gilding is "unnecessary ornamentation"—a definition that the government vehemently denies is applicable in this case.

In support of their position defendants cite several cases, including the leading case in this Circuit, *i.e.*, *United States v. Napolitano*, 761 F.2d 135 (2d Cir.1985). While these cases refer to the gilding of an earlier charge, none actually hold that an indictment was, because of gilding, subject to dismissal. See *Napolitano*, 761 F.2d at 138 (refusing to find gilding where indictment charged larceny of bank funds and complaint charged making of false application for a bank account); *United States v. Nixon*, 634 F.2d 306, 309 (5th Cir.), *cert. denied*, 454 U.S. 828, 102 S.Ct. 120, 70 L.Ed.2d 103 (1981) (refusing to find gilding where indictment was for perjury arising out of alleged false testimony to grand jury in connection with earlier counterfeit complaint); *United States v. DeTienne*, 468 F.2d 151 (7th Cir.1972), *cert. denied*, 410 U.S. 911, 93 S.Ct. 974, 35 L.Ed.2d 274 (1973) (refusing to find gilding where initial complaint related to arrest on state charges).[2]

As the foregoing discussion makes clear, defendants have not cited, and the Court has not unearthed, a case that describes adequately the concept of gilding. The Court returns, therefore, to the leading case in this Circuit on the issue that has been raised—*United States v. Napolitano*.

In *Napolitano*, defendant was arrested on September 23, 1982. The next day the government filed a criminal complaint charging Napolitano with applying for a bank account under a false name, address and bank reference in violation of 18 U.S.C. § 1014. The thirty-day period during which the government was required to file an information or indictment came and went without the government taking the appropriate action. In September of 1984, the government filed its indictment (the "1984 Indictment"). That indictment charged Napolitano with bank larceny, in violation of 18 U.S.C. § 2113(b), and with conspiracy to commit that offense.

Arguing that the 1984 Indictment was based on the same activity that gave rise to the filing of the September 1982 complaint, Napolitano moved to dismiss on Speedy Trial Act grounds. Both the District Judge

---

**2.** Defendant Oliver has called the Court's attention to *United States v. Iaquinta*, 515 F.Supp. 708 (N.D.W.Va.1981). That case, however, is readily distinguishable since it involved the issue of whether an arrest after a joint state/federal investigation triggered the running of the Speedy Trial clock. In any event, *Iaquinta* was reversed on appeal by the Fourth Circuit. See *United States v. Iaquinta*, 674 F.2d 260 (4th Cir.1982).

and the Court of Appeals rejected defendant's argument and held that the prosecution could go forward. To reach this result, the Court of Appeals examined the plain language as well as the legislative history of the Act. Specifically, the Court noted that the Act required dismissal only of "*such* charges ... contained in *such* complaint." *Napolitano*, 761 F.2d at 137 (emphasis in original). Thus, the Court noted that the language in the Act lends support to the notion that only the specific crimes set forth in the complaint must be dismissed if they are later charged in an untimely indictment.

The Second Circuit Court of Appeals also pointed out that the legislative history of the Act reveals that Congress rejected a construction of the Act that focuses on the nature of the activity for which the defendant was arrested. Thus, the Court noted that "Congress considered and rejected [the] suggestion that the Act's dismissal sanction be applied to subsequent charges if they arise from the same criminal episode as those specified in the original complaint or were known or reasonably should have been known at the time of the complaint." *Napolitano*, 761 F.2d at 137.

Finally, in adopting a literal interpretation of the Act, the Court noted that such a construction would relieve the District Courts from engaging in the " 'complex task of investigating the relationship between the conduct underlying the offenses charged in the complaint and the conduct underlying the offenses listed in the indictment.' " *Napolitano*, 761 F.2d at 138, quoting *United States v. Pollock*, 726 F.2d 1456, 1462-63 (9th Cir.1984).

Although the Second Circuit acknowledged that there may be instances where dismissal is required because the indictment merely " 'gilds' an earlier charge" or sets forth a "mere difference in accusational dates", *Napolitano*, 761 F.2d at 138, the Court held that such was not the case presented. Instead, the Court refused to find gilding where the indictment charged a different crime based upon different proof. Although *Napolitano* does not offer crystal-clear guidance, the Court must,

based upon its interpretation of the language of *Napolitano*, reject the notion that the present indictment must be dismissed as a mere gilding of the 1982 complaints. Here, as in *Napolitano*, the crimes currently charged are different and require different proof than those charged in the original complaint.

In *United States v. Bilotta*, 645 F.Supp. 369 (E.D.N.Y.1986) it appears, at first glance, that another District Court reached a different result under similar circumstances. That case, however, is distinguishable. There, defendant's conduct relating to exporting various military equipment to Libya led to his arrest pursuant to a complaint charging: (1) conspiracy to violate 22 U.S.C. § 2778; (2) conspiracy to violate 50 U.S.C.App. § 2401 and (3) the violation of 50 U.S.C.App. 2410(b)(1) and 18 U.S.C. § 2. A timely indictment was filed charging defendant with the violation only of the illegal export statute, *i.e.*, 22 U.S.C. § 2778. Two years later, the government filed a superceding indictment. The superceding indictment charged defendants with conspiracy to violate 22 U.S.C. § 2778.

Like the defendants here, Bilotta moved to dismiss the indictment on Speedy Trial grounds. Granting the dismissal, the District Judge characterized the superceding indictment as "simply a more detailed version of the crimes described in the complaint [and as] the completed canvas of the painting first etched in the complaint." *Bilotta*, 645 F.Supp. at 371. Seizing upon this language, defendants argue that this case presents the same situation as that presented in *Bilotta*. The difference between this case and *Bilotta*, however, is that the original complaint in *Bilotta* charged the defendant with conspiracy. Although the superceding indictment added certain factual allegations, the actual crime charged, *i.e.*, conspiracy to violate 22 U.S.C. § 2778, was the same crime charged in the original complaint and was thus subject to dismissal. Thus, *Bilotta* does not hold that a previously uncharged conspiracy count must be construed as no more than a gilding of the original complaint, and the Court finds no language in *Napolitano* to compel such a conclusion.

In addition to relying on *Bilotta*, defendants argue that the government's conduct in prosecuting this case mandates a finding that the Act has been violated. Defendants repeatedly point to the fact that the Assistant United States Attorney originally assigned to this case failed to diligently prosecute this matter. Indeed, defendants' version of the event is, to some extent, borne out by the government. In an affirmation submitted by Dennis E. Milton, the Assistant that is now handling this case, Mr. Milton details the progress in this case. Although the Milton affirmation acknowledges that the Assistant originally assigned to this case failed to take the appropriate steps to move this case along, the affirmation and the Court's assessment of this matter make clear that the original Assistant's conduct is not typical of the assistants now practicing in the Eastern District of New York and is certainly not typical of Mr. Milton.

While defendants may be correct when they characterize this case as one that was merely "shoved into a drawer, hidden, put away [and] disregarded," such conduct does not, under *Napolitano*, require dismissal. The Court finds nothing to suggest that there is an element of "laziness in prosecution" that must be factored into the decision of whether or not to dismiss a case under section 3161(b). If that were the case the Court would probably be inclined to grant the motions to dismiss. In the Court's view, however, such concerns are properly handled by reference to the applicable statute of limitations which, as noted above, had not yet run at the time of the filing of the indictment.

In sum, the Court reads the binding precedent in this Circuit to require dismissal of charges in an indictment only of those crimes charged in a complaint filed more than thirty days prior to the indictment at issue. *Accord United States v. Jervey*, 630 F.Supp. 695, 697 (S.D.N.Y. 1986). Although there may exist such a thing as a gilding exception to the Speedy Trial Act, the Court finds little guidance from other courts and no binding precedent in this Circuit to compel the conclusion that this case falls within that exception. In the absence of clearer guidance from the Court of Appeals, the Court declines to dismiss the present indictment.

## B. *Due Process*

■ Defendants next contend that the government's pre-indictment delay violates the due process clause of the Fifth Amendment to the United States Constitution. To establish a due process violation based upon a theory of pre-indictment delay, defendants must prove: (1) that the delay caused substantial prejudice to their right to a fair trial, and (2) that the delay was an intentional device to gain tactical advantage over the accused. *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971); *see United States v. Snyder*, 668 F.2d 686, 689 (2d Cir.1982).

■ While a showing of prejudice alone renders a due process claim ripe for adjudication, a defendant can prevail on the claim only if he can show that the government's conduct "violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions' and which define 'the community's sense of fair play and decency.'" *United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977). Defendants have made no such showing here.

Here, defendants' claims of prejudice stem, essentially, from the problems associated with the passage of time. Thus, defendants complain of faded memories and files put into storage. Such problems, however, do not automatically rise to the level of prejudice that mandates the finding of a due process violation. Moreover, the affirmation of the Assistant United States Attorney currently handling this case indicates that the case file has been reconstructed, no evidence has been lost and defense counsel has already been provided with at least ten cassettes of defendants' conversations. Thus, it does not appear that the passage of time has resulted in a loss of documents that would prejudice defendants' preparation of an effective defense.

Even if defendants' allegations as to prejudice were sufficient, a due process violation would not follow here because defendants have failed to show the unfair governmental conduct that is indicative of a due process violation. Indeed, the record here reflects quite the opposite. As noted above, evidence has been preserved and provided to defense counsel. As evidence that the government never considered the investigation to be over, the Assistant United States Attorney has pointed to attempts by agents working on this case to contact the Assistant that was originally handling this matter. Although the government has conceded that the prosecution of this case was anything but diligent, it has become clear that the blame for the failure to vigorously prosecute can be placed upon the Assistant United States Attorney who handled the case from the outset. While it is unfortunate that this particular attorney was guilty of ignoring the case, the Court cannot find that this type of conduct violates the due process clause of the Fifth Amendment. Accordingly, the motions to dismiss the indictment on due process grounds are denied.

SO ORDERED.