UNITED STATES of America,
Appellant

v.

Tammy WATKINS; Anissa Peoples

No. 02–2386.

United States Court of Appeals,
Third Circuit.

Argued Jan. 23, 2003.

Opinion filed: Aug. 6, 2003.

Patrick L. Meehan, United States Attorney, Laurie Magid, Deputy U.S. Attorney for Policy and Appeals, Robert A. Zauzmer (Argued), Assistant U.S. Attorney, Senior Appellate Counsel, Barbara J. Cohan, Walter S. Batty, Jr., Assistant U.S. Attorney, Office of United States Attorney, Philadelphia, PA, for Appellant.

David L. McColgin (Argued), Dina Chavar, Maureen K. Rowley, Defenders Association of Philadelphia, Federal Court Division, Philadelphia, PA, for Appellee Tammy Watkins.

Elizabeth K. Ainslie, Matthew B. Holmwood (Argued), Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for Appellee Anissa Peoples.

Before: NYGAARD, AMBRO and LOURIE *, Circuit Judges.

## OPINION OF THE COURT

AMBRO, Circuit Judge.

Tammy Watkins and Anissa Peoples were arrested while attempting to smuggle drugs into the United States. Following a violation of their rights under the Speedy

* Honorable Alan D. Lourie, United States Circuit Judge for the Federal Circuit, sitting by designation.

Trial Act, the United States District Court for the Eastern District of Pennsylvania dismissed all charges against them with prejudice. The Government appeals this ruling on the ground that the clear terms of the Speedy Trial Act, as construed by our Court's precedent, authorized the District Court to dismiss only those charges contained in the complaint (conspiracy to import cocaine), and not the subsequent charges for which the Defendants were indicted (importation of cocaine). We agree.[1]

## I. BACKGROUND

On July 19, 2001, Watkins and Peoples were arrested at Philadelphia International Airport after arriving on a flight from Jamaica. The next day a Special Agent of the United States Customs Service, Richard J. Stingle, filed a complaint charging them with conspiracy to import cocaine in violation of 21 U.S.C. § 963. The complaint stated:

> That on or about 7/19/01, at Philadelphia International Airport, at Essington, in the Eastern District of Pennsylvania, defendants TAMMY WATKINS and ANISSA PEOPLES did knowingly and intentionally conspire, combine, confederate and agree to import more than 500 grams, that is, approximately one kilogram of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, into the United States from Jamaica, in violation of Title 21, United States Code, Section 963.

In a box on the complaint, where the Government was to indicate the "basis of complainant's charge against the accused," was typed "see attached affidavit." That affidavit stated:

Your affiant, Richard J. Stingle, a Special Agent of the United States Customs Service, being duly sworn, deposes and says as follows:

1. I am a Special Agent of the United States Customs Service and have been so employed for the past 21 years. The information contained in this affidavit is based upon my personal observations and investigation as well as my interviews of other participating agents and employees of the United States Customs Service.

2. On July 19, 2001, defendants Tammy Watkins and Anissa Peoples arrived at Philadelphia International Airport on USAirways flight 670 from Montego Bay, Jamaica.

3. Defendant Anissa Peoples told Customs inspectors that she was traveling with defendant Tammy Watkins. She was visibly nervous, fidgety and avoided eye contact with inspectors. When her responses to routine Customs questions were found to be wholly inconsistent with those of Watkins, both women were asked to submit to a patdown.

4. Defendant Watkins consented to a patdown, which disclosed a hard object in her groin area. She removed the object, which contained a white powder that was field-tested with positive results for cocaine. Defendant Peoples subsequently was patted down, yielding one hard object in the groin area and numerous pellets from her buttocks. These were also field tested with positive results for cocaine.

5. It was subsequently determined that both women had also swallowed numerous pellets of cocaine. Both

---

1. We have jurisdiction over the District Court's final order dismissing the indictment pursuant to 18 U.S.C. § 3731 and 28 U.S.C. § 1291.

were taken to Fitzgerald Mercy [H]ospital. At the time this affidavit is being prepared, defendant Watkins (who admitted swallowing 100 pellets of cocaine) has passed more than 110 pellets of the drug. Defendant Peoples has passed 100 pellets and medical personnel have yet to determine whether any more pellets remain in her body. At least one pellet from each defendant has been field-tested with positive results for cocaine.

6. The packet which had been carried vaginally by defendant Watkins had a gross weight of 191 grams. The packet which had been carried vaginally by defendant Peoples had a gross weight of 154 grams. Your affiant estimates that the total weight of all of the cocaine imported by Peoples and Watkins is approximately one kilogram.

7. Defendant Watkins told your affiant that she had been paid to smuggle drugs into the United States, and had traveled with Peoples, who she claims to have known since high school. Cocaine is a Schedule II narcotic controlled substance.

Defendants initially appeared before a magistrate judge on July 23, 2001, and on July 26th they waived hearings on the Government's motion for pretrial detention and were ordered held without bail pending indictment and trial. The Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, requires that an indictment or information be filed within thirty days from the date on which the defendant was arrested. *Id.* at § 3161(b). In this case, both parties agree that the Government was required to charge Defendants by indictment or information by August 20, 2001.

With Defendants' consent, the Government over the next five months moved for a series of five thirty-day continuances extending the initial thirty-day deadline, as permitted by § 3161(h)(8)(A). Each motion was approved by a magistrate judge, and each stated that Defendants had been arrested on warrants "issued pursuant to a criminal complaint charging them with conspiracy to import a controlled substance." The fifth and last of these orders was entered on December 19, 2001, making January 18, 2002, the thirtieth and final day for an indictment. The Government failed to charge either Defendant by January 18th.

On February 20, 2002, Peoples moved to dismiss with prejudice the charge against her on the ground that her Speedy Trial Act rights had been violated. The Magistrate Judge granted the motion on February 22nd, but vacated the order on February 26th after the Government moved for an opportunity to respond.

On February 27, 2002—forty days after the Speedy Trial Act clock had expired—a grand jury returned an indictment charging both Defendants with one count of conspiracy to import more than 500 grams of cocaine (in violation of 21 U.S.C. § 963) and one count of importation of more than 500 grams of cocaine (in violation of 21 U.S.C. § 952).

On March 7, 2002, Peoples moved to dismiss the indictment against her with prejudice, again arguing a violation of her Speedy Trial Act rights. The Government's response conceded that the Speedy Trial Act had been violated, but requested that the charges be dismissed without prejudice. The District Court heard oral argument and issued a memorandum opinion and order on March 12, dismissing the indictment against Peoples with prejudice.

On March 14, 2002, Watkins likewise moved to dismiss the indictment against her with prejudice for the same reason.

The Government this time responded that its concession of dismissal (without prejudice) was limited only to Count One (conspiracy), and argued that dismissal of Count Two (importation) was precluded by our decision in *United States v. Oliver*, 238 F.3d 471 (3d Cir.2001). The Government at the same time filed a motion to reconsider the dismissal with prejudice of the indictment against Peoples, and repeated its argument that under *Oliver* the District Court properly may dismiss only the charge contained in the complaint; *i.e.*, conspiracy.

 The District Court disagreed. In an April 19, 2002, opinion the District Court granted Watkins's motion to dismiss the indictment with prejudice and denied the Government's motion for reconsideration. *United States v. Watkins*, 200 F.Supp.2d 489 (E.D.Pa.2002). (Thus, both the conspiracy and importation counts against each Defendant had been dismissed with prejudice.) The District Court based its decision on two lines of reasoning: the "inartfulness of the complaint and the affidavit of probable cause," and the "Government's misplaced reliance on Third Circuit caselaw." *Id.* at 491. On the first line, the Court noted that, although the charging complaint alleged only conspiracy, the affidavit of probable cause upon which the complaint was based failed to mention or even imply the existence of a conspiracy. Had the Government drafted a complaint that was fairly based on the underlying affidavit, it would have included the importation charge from the outset. As for the second line, the Court concluded that the Government's reliance on *Oliver* was unavailing because in that case the

dismissal of the earlier indictment was without prejudice, the later indictment contained no overlapping charges with the original complaint, and, unlike here, there was no evidence of evasion of the Speedy Trial Act deadlines. The Government appeals both dismissal rulings.[2]

## II. CHARGES CONTAINED IN THE COMPLAINT

We address first the District Court's conclusion as to which charges were contained in the complaint. As noted above, the complaint filed on July 20, 2001, charged that Defendants "did knowingly and intentionally conspire ... to import ... cocaine ... in violation of Title 21, United States Code, Section 963." But it was not until February 27, 2002—after the Speedy Trial Act violation had occurred— that the grand jury returned an indictment formally charging each Defendant with one count of conspiracy *and* one count of importation. Section 3161(b) of the Speedy Trial Act requires that an indictment must be filed within thirty days after arrest. Section 3162(a)(1) sets the sanctions for failure to do so:

> If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no information or indictment is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual *contained in such complaint* shall be dismissed or otherwise dropped.

(Emphasis added). Because only the conspiracy charge was "contained" in the com-

---

**2.** The District Court's finding that the complaint, when read together with the affidavit, contained the substantive importation charge in addition to the explicitly stated conspiracy charge, is a factual conclusion and is reviewed for clear error. *United States v. Latta-*

*ny,* 982 F.2d 866, 870 (3d Cir.1992). The District Court's interpretation of Third Circuit precedent construing the Speedy Trial Act is a legal conclusion and is subject to plenary review. *Id.*

plaint, argues the Government, that alone should have been dismissed, permitting prosecution of both Defendants on the importation charge.

■ The District Court accepted that "[i]n a very narrow sense the Government is correct: the complaint in these cases literally alleged only conspiracy." 200 F.Supp.2d at 491. The District Court also found, however, that the affidavit upon which the complaint is based does not support a conspiracy charge because it "fails to mention or even imply the existence of a conspiracy," and "is devoid of any reference to collusion, conspiracy, or an agreement." *Id.* Instead, "the affidavit is directed entirely at the substantive offense of importation, outlining how, and in what quantity, Ms. Peoples and Ms. Watkins allegedly brought cocaine into the country." *Id.* Thus, "[h]ad the Government drafted a complaint that was fairly based on the underlying affidavit, it would now be unable to contend that its case against Defendants for the substantive offense can go forward." [3]

Both sides agree that a complaint and affidavit are to be read in conjunction with one another. *See* Fed.R.Crim.P. 4(a) ("If the complaint or one or more affidavits filed with the complaint establish probable cause to believe that an offense has been committed and that the defendant committed it, the judge must issue an arrest warrant to an officer authorized to execute it."). But the Government takes issue with the District Court's finding that the affidavit does not support the conspiracy charge named in the complaint. Because the two documents are read together, it argues, it is irrelevant that the complaint uses the word "conspiracy" while the affidavit does not. And according to the Government, the affidavit here included the allegations that Defendants: were traveling together on the same flight; were found, after consenting to a patdown, to have been carrying cocaine in a hard object in their groin area; were determined to have swallowed multiple pellets of cocaine; and were carrying approximately the same quantities of cocaine. Further, Watkins told the customs agent that she and Peoples had been friends since high school. Thus, the Government contends that the contents of the affidavit amply supported the conspiracy charge stated in the complaint.

■ We agree. A magistrate judge determining if probable cause to arrest exists is permitted to infer agreement, collusion, or conspiracy from the facts in the affidavit. *See* Fed.R.Crim.P. 4(a); *Giordenello v. United States,* 357 U.S. 480, 486, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). *Cf. United States v. Whitner,* 219 F.3d 289, 296 (3d Cir.2000) (noting in the context of a magistrate judge's determination of probable cause to issue a search warrant, "[t]he supporting affidavit must be read in its entirety and in a commonsense and nontechnical manner") (quoting *United States v. Conley,* 4 F.3d 1200, 1206 (3d Cir.1993)). The facts alleged in the affidavit are sufficient to establish probable cause to believe Defendants had a criminal agreement to act in concert to import cocaine. But although we conclude that the District Court's statements to the contrary were clearly erroneous, the point is not dispositive. Even were the affidavit inade-

---

**3.** *Id.* We note that the District Court did not explicitly state that the importation charge was contained in the complaint, but merely implied (albeit strongly) that it should have been. Nevertheless, because the District Court dismissed both the conspiracy and im-

portation charges pursuant to the Speedy Trial Act, and § 3162(a)(1) requires the dismissal of only those charges "contained in" the complaint, we read the District Court's opinion to find that the complaint contained both charges.

quate to establish probable cause to arrest Defendants on the conspiracy charge, the proper remedy was to dismiss the conspiracy charge as not based on probable cause. *Cf. Giordenello*, 357 U.S. at 486–87, 78 S.Ct. 1245. In any event, dismissal of that charge clearly was required by the Speedy Trial Act violation.

■ Our resolution of this appeal turns not on the District Court's findings as to the charge that *was* explicitly stated in the complaint (conspiracy), but rather its findings as to the charge that *was not* mentioned (importation). Neither the District Court nor the Defendants have cited any caselaw or statutory provision that supports a trial judge's authority to "find"— and then subsequently dismiss with prejudice—a charge not stated in the complaint.

In fact, at least one case arguably supports a contrary rule, *i.e.*, that courts should be wary of finding charges in a complaint for the purposes of a Speedy Trial Act dismissal. In *United States v. Derose*, 74 F.3d 1177, 1182–83 (11th Cir. 1996), two defendants were charged in a criminal complaint with conspiracy in attempting to procure marijuana. Both defendants eventually were indicted for conspiracy (under 21 U.S.C. § 846), and possession with intent to distribute marijuana (in violation of 21 U.S.C. § 841). Following a Speedy Trial Act violation, the conspiracy charge was dismissed, but the defendants were tried and convicted on the substantive possession charge. On appeal, the defendants argued that the possession charge also had been stated in the complaint, and thus likewise should have been dismissed with prejudice, because the conspiracy charge under 21 U.S.C. § 846 recited the elements of the possession charge under 21 U.S.C. § 841. The Eleventh Circuit acknowledged that the conspiracy charge in "the

complaint tracked the statutory language of 21 U.S.C. § 841(a)(1) when it alleged that they 'did knowingly and intentionally possess with intent to distribute a controlled substance,' " but also noted that the Government is required when alleging conspiracy to state the elements of the substantive offense that the defendants conspired to violate. *Id.* at 1183. As a result, the Eleventh Circuit rejected the argument that the "mere presence of the statutory language of the substantive offense demonstrates that the complaint contained the substantive charge." *Id.*

*Derose* is neither controlling nor directly on point, but it does caution reluctance to parse the contents of the charging documents to "find" charges that could have been, but were not, contained in the complaint. Just as a complaint alleging conspiracy "must state the substantive offense that the defendants conspired to violate," *id.*, so too must an affidavit attached in support of the complaint state the facts establishing probable cause to believe the defendants conspired to violate the substantive offense. It does not necessarily follow, however, that reciting those facts in an affidavit necessarily amends the complaint to charge the defendant with the substantive offense. The District Court's finding—"[h]ad the Government drafted a complaint that was fairly based on the underlying affidavit, it would now be unable to contend that its case against Defendants for the substantive offense can go forward," 200 F.Supp.2d at 491—thus was clearly erroneous.

We conclude that the complaint charged Defendants only with conspiracy. Accordingly, the Government's violation of Defendants' Speedy Trial Act rights mandates that this charge be dismissed, and we agree with the District Court's decision to

do so with prejudice.[4]

## III. WHETHER IMPORTATION CHARGE SHOULD BE DISMISSED

Our inquiry is not complete, however, as we still must determine whether the Speedy Trial Act violation precludes the Government from charging Defendants with the substantive importation offense. The District Court rejected the Government's argument that it was permitted to do so under our decision in *United States v. Oliver*, 238 F.3d 471 (3d Cir.2001). As much of today's decision rests on our understanding of *Oliver*, we first revisit its holding.

Gerold Oliver, on leave from the Post Office, sought and received total disability benefits while also working as a registered nurse. The Government filed a complaint charging him with false application for benefits, in violation of 18 U.S.C. §§ 1920–1922 and 18 U.S.C. §§ 1001–1002. Following a series of continuances, the Government moved to dismiss its own complaint, which the Magistrate Judge granted without prejudice. A grand jury later indicted

Oliver for embezzling Government property, in violation of 18 U.S.C. §§ 641–642. After he argued unsuccessfully to dismiss the indictment because it violated the Speedy Trial Act, Oliver was convicted. *Id.* at 472.

On appeal he again raised his Speedy Trial Act argument, asserting the indictment was an "invalid evasion" of the statutory time limits and that the Government brought the subsequent charges only because the original charges were time-barred. *Id.* at 473. Oliver claimed that "evidence of a run-around is clear because the charges in the indictment are based on the same underlying conduct as the initial complaint." *Id.* We rejected both of these arguments. First, "our review of decisions by other courts of appeals reveals a consensus that the Speedy Trial Act requires the dismissal of only those charges that were made in the original complaint that triggered the thirty-day time period."[5] Second, "courts have rejected the application of the transactional test suggested by Oliver and point out that Congress itself considered and rejected this option."[6] We

---

**4.** Section 3162(a)(1) of the Speedy Trial Act includes a number of factors to guide a district court in determining whether to dismiss a case with prejudice. The Government does not appeal the District Court's ruling on prejudice as to the dismissal of the conspiracy charge.

**5.** *Id.* (citing *United States v. Miller*, 23 F.3d 194, 199 (8th Cir.1994) ("A defendant's arrest on one charge does not necessarily trigger the right to a speedy trial on another charge filed after his arrest."); *United States v. Nabors*, 901 F.2d 1351, 1355 (6th Cir.1990) ("18 U.S.C. § 3162(a)(1) only requires the dismissal of the offense charged in the complaint ...."); *United States v. Giwa*, 831 F.2d 538, 541 (5th Cir.1987) ("The Act requires dismissal of *only* those charges contained in the original complaint."); *United States v. Napolitano*, 761 F.2d 135, 137 (2d Cir.1985) ("The statutory language is clear: it requires dis-

missal only of 'such charge against the individual contained in such complaint.'"); *United States v. Heldt*, 745 F.2d 1275, 1280 (9th Cir.1984) ("Charges not included in the original complaint are not covered by the Act ...."); *United States v. Pollock*, 726 F.2d 1456, 1462 (9th Cir.1984) ("We hold that when the government fails to indict a defendant within 30 days of arrest, section 3162(a)(1) requires dismissal of only the offense or offenses charged in the original complaint."); *United States v. Brooks*, 670 F.2d 148, 151 (11th Cir.1982) ("An arrest triggers the running of § 3161(b) of the Speedy Trial Act only if the arrest is for the same offense for which the accused is subsequently indicted.")).

**6.** *Id.* (citing *Derose*, 74 F.3d at 1184 ("Congress considered and declined to follow the suggestion that the Speedy Trial Act's dismissal sanctions should be applied to a subsequent

adopted the position of these courts and "affirm[ed] the District Court's decision not to dismiss the indictment against Oliver which contained no overlapping charges with the original complaint against him." *Id.*

The District Court in this case distinguished *Oliver* on three specific grounds and one general policy concern.

First, in *Oliver*, the dismissal of the earlier indictment was without prejudice. Second, the later indictment in *Oliver* "contained no overlapping charges with the original complaint" against the Defendant. *Oliver*, 238 F.3d at 474. *Cf. United States v. Napolitano*, 761 F.2d 135, 138 (2d Cir.1985) ("a subsequent prosecution may be barred if it is based on an indictment which merely 'gilds' an earlier charge"). Third, the cases at bar involve[ ] evidence of a runaround not present in *Oliver*. Here, it was only after the indictment was dismissed with prejudice that the Government advanced its argument, premised on its disingenuous reading of the affidavit of probable cause, that the prosecution of the importation offense is permissible.

Moreover, the broader implications of the Government's argument are troubling. The Government advances an interpretation of the Speedy Trial Act that would not merely encourage irresponsible gamesmanship, but eviscerate the Act altogether. Under its interpretation of *Oliver*, the Government would be free to file a complaint charging only conspiracy, knowing full well that in the event of a dismissal for violations of the

charge if it arose from the same criminal transaction or event as those detailed in the initial complaint or were known or reasonably should have been known at the time of filing the initial complaint."); *Napolitano*, 761 F.2d at 137 ("[T]he legislative history of the Act clearly indicates that Congress consid-

Speedy Trial Act it would nevertheless be free to prosecute the substantive offense which the defendant allegedly conspired to do. For this reason, as well, the Government's position is untenable.

200 F.Supp.2d at 492 (internal footnote omitted). We address each of these well-made reasons in turn.

### A. Dismissal Without Prejudice

The District Court's statement that "in *Oliver*, the dismissal of the earlier indictment was without prejudice," *id.*, is not correct. In *Oliver*, the earlier dismissal without prejudice was of the *complaint*, not the indictment. 238 F.3d at 472. More importantly, whether an initial dismissal of a complaint was without prejudice was not a dispositive factor relied on by the cases cited with approval in *Oliver*. For example, in both *Miller*, 23 F.3d at 198, and *Derose*, 74 F.3d at 1180–81, the Eighth and Eleventh Circuits, respectively, held that even though the initial complaint was dismissed with prejudice, the Speedy Trial Act did not preclude the later indictment and prosecution for a separate offense not contained in the complaint.

### B. "Gilding Exception" to the Speedy Trial Act

The second point on which the District Court distinguished *Oliver*—the so-called "gilding exception" to the Speedy Trial Act—is the dominant disagreement between the parties on appeal. The District Court's cited source of the phrase, the Second Circuit's 1985 decision in *Napolitano*, does not provide much content to the

ered and rejected defendant's suggestion that the Act's dismissal sanction be applied to subsequent charges if they arise from the same criminal episode as those specified in the original complaint or were known or reasonably should have been known at the time of the complaint.")).

term beyond recognizing that some cases "hold only that a subsequent prosecution may be barred if it is based on an indictment which merely 'gilds' an earlier charge or if the subsequent charge is a mere difference in accusational dates." 761 F.2d at 138. In *Napolitano,* "the initial charge against the defendant for making a false application for a bank account was entirely different from and based on different proof than the later indictment for larceny of bank funds." *Id.*

Other courts similarly have recognized the existence of the gilding exception, but also failed to provide any significant explanation of the doctrine's contours. For example, in *United States v. Giwa,* 831 F.2d 538 (5th Cir.1987), the Fifth Circuit accepted that "there does exist a notable exception to the general rule that an arrest on one charge does not trigger the right to a speedy trial on another charge filed after arrest." *Id.* at 542. "If a subsequent charge merely 'gilds' the initial charge filed against an individual and the different accusatorial dates between the two charges are not reasonably explicable, the date of the initial arrest may trigger the applicable time periods of the Act as to prosecution for both offenses." *Id.* (citing *Napolitano,* 761 F.2d at 138); *United States v. Nixon,* 634 F.2d 306, 309 (5th Cir.), *cert. denied,* 454 U.S. 828, 102 S.Ct. 120, 70 L.Ed.2d 103 (1981) (quoting *United States v. DeTienne,* 468 F.2d 151, 155 (7th Cir.1972), *cert. denied,* 410 U.S. 911, 93 SCt. 974, 977, 35 L.Ed.2d 274 (1973)). The defendant in *Giwa* had been arrested and charged with credit card fraud in violation of 18 U.S.C. § 1029(a)(3). After a Speedy Trial Act violation, he was indicted for mail fraud and use of a false Social Security number in violation of 18 U.S.C. § 1341 and 42 U.S.C. § 408(g)(2). *Id.* Because "[t]he offenses for which Giwa was arrested and indicted, while arising from the same criminal transaction, are separate

and distinct offenses each requiring proof of different elements," the Fifth Circuit concluded that "the 'gilding' exception does not apply and section 3162(a)(1) bars prosecution of only the initial offense charged, the charge of credit card fraud." *Id.* at 543.

■ A more recent discussion of the gilding exception is found also in a Fifth Circuit decision, *United States v. Bailey,* 111 F.3d 1229 (5th Cir.1997). The Court again acknowledged the existence of the exception, and noted, as had at least one other court, that dictionaries variously define "gilding" as "embellishing" and "unnecessary ornamentation." *Id.* at 1236 (quoting Webster's Third New International Dictionary, Webster's Collegiate Dictionary; citing *United States v. Oliver,* 683 F.Supp. 35, 38 (E.D.N.Y.1988)). "Thus, a gilded charge is one that merely annotates in more detail the same charge alleged in the initial accusatory instrument . . . ." *Id.* The Court also concluded that its interpretation of the gilding exception aligned with the Supreme Court's approach to analyzing multiple prosecutions for double jeopardy purposes. *Id.* Under the so-called "same-elements" test—based on the Supreme Court's decision in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)—a court "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution." *Bailey,* 111 F.3d at 1236 (quoting *United States v. Dixon,* 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993)). In other words, different charges will be construed as the same if they contain the same elements. Applied to the circumstances in *Bailey,* the Fifth Circuit concluded the gilding exception did not apply where felony and misdemeanor charges for receipt of the same

stolen handgun contained different elements as to the valuation of the weapon. *Id.* at 1236–37.

■ We have not heretofore addressed the gilding exception, and other courts question whether it even exists. *United States v. Archer*, 984 F.Supp. 321, 325 n. 4 (E.D.Pa.1997) (noting both points). For example, in *Derose*—a case we already have cited for analyzing whether unstated charges may be found in a complaint—the Eleventh Circuit declined to decide whether the gilding exception was a viable doctrine, but concluded that, even assuming it was, the exception would not apply to the facts of that case. 74 F.3d at 1183. The defendants argued that the charged offenses—conspiracy to possess with intent to distribute marijuana and possession with intent to distribute marijuana—arose from the same events, were both contained in the complaint, and therefore the "application of the gilding exception is appropriate here because the two counts are not separate and distinct." *Id.* The Eleventh Circuit disagreed on two grounds.

> First, Congress considered and declined to follow the suggestion that the Speedy Trial Act's dismissal sanctions should be applied to a subsequent charge if it arose from the same criminal transaction or event as those detailed in the initial complaint or were known or reasonably should have been known at the time of filing the initial complaint. *United States v. Napolitano*, 761 F.2d 135, 137–38 (2d Cir.1985) (citing A. Partridge, Legislative History of Title I of the Speedy Trial Act of 1974, pp. 194–195, Federal Judicial Center, 1980). Second, it is well established that conspiracies and substantive offenses are separate and distinct offenses requiring proof of different elements. *E.g., Callanan v. United States*, 364 U.S. 587, 593, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961).

Thus, it is questionable whether a substantive offense can ever gild a conspiracy charge, since they are separate and distinct offenses.

*Id.* at 1184. Accordingly, while "not decid[ing] the fate of the gilding exception in this ruling," the *Derose* Court held "the substantive offense contained in the indictment did not gild the conspiracy charge found in the complaint." *Id.*

We find *Derose* instructive in this context as well. Even assuming (without deciding) that the gilding exception to the Speedy Trial Act is viable, it does not apply in this case. We agree with the Eleventh Circuit that because conspiracies and substantive offenses contain different elements, "it is questionable whether a substantive offense can ever gild a conspiracy charge." *Id.* This view is further supported by the statements of the Fifth Circuit—which explicitly has recognized the gilding exception—in *Bailey* analogizing the exception's operation to the *Blockburger* test for determining if multiple prosecutions are barred by principles of double jeopardy. *See* 111 F.3d at 1236. Under this formulation, the dismissal of the charge against Defendants for conspiracy to import cocaine does not preclude prosecution for the substantive offense of importation of cocaine because "a substantive crime and a conspiracy to commit that crime are not the 'same offence' for double jeopardy purposes." *United States v. Felix*, 503 U.S. 378, 389, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992).

■ Anticipating this hurdle, Defendants argue that the gilding exception should not be limited to a narrow comparison of the elements of the offenses; instead, a court should focus on whether the proofs underlying the two charges are the same. But a "same-proofs" test is untenable. Whether the proofs underlying the two charges are identical is no different

than whether the charges in the indictment are "based on the same underlying conduct as the initial complaint," *i.e.*, the transaction test we specifically rejected in *Oliver*, 238 F.3d at 473. Defendants disagree, arguing that "*Oliver* did not have occasion to address the gilding exception because ... the two charges at issue there—making false statements and embezzlement—plainly required different proofs even though they both arose from the same criminal transaction." Appellees' Br. at 31. This distinction does not rehabilitate the same-proofs test. Conspiracy and substantive offenses require separate evidence. A conspiracy charge does not require proof of success in committing the offense (as does a substantive offense), only an agreement to commit it. And a conspiracy charge (unlike a substantive offense) also requires proof that multiple persons agreed to commit the crime in concert. *See, e.g., United States v. Danskers*, 537 F.2d 40, 51 (3d Cir.1976) ("the crime of conspiracy is separate and distinct from the related substantive offense. It requires proof of the additional element of an agreement between the alleged co-conspirators. Hence, it is neither illogical nor impossible for a jury to find an alleged conspiracy nonexistent while, at the same time, convicting the defendants of the substantive offenses charged.") (citing *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *United States v. Pappas*, 445 F.2d 1194 (3d Cir.1971)).

Even were we inclined to recognize the validity of a gilding exception to the Speedy Trial Act (a question left for another day), it would not prevent the prosecution of Defendants on the substantive importation charge following the dismissal of the related conspiracy charge.

### C. Government "Run–Around"

The District Court's third stated reason for distinguishing *Oliver*—"the cases at bar involve[ ] evidence of a run-around not present in *Oliver*"—is plausible on its face: "[h]ere, it was only after the indictment was dismissed with prejudice that the Government advanced its argument, premised on its disingenuous reading of the affidavit of probable cause, that the prosecution of the importation offense is permissible." 200 F.Supp.2d at 492. Nonetheless, we view the record differently. First, the Government's reading of the affidavit is not, we discern, disingenuous. As explained above, we believe it is correct. Second, while the Government should have offered its arguments based on *Oliver* before the indictment was dismissed, its failure to do so does not mean that *Oliver* is distinguishable or that its construction of the Speedy Trial Act may be disregarded.

### D. "Gamesmanship" Aspect of Prosecution

The District Court's final concern that "the broader implications of the Government's argument are troubling," *id.*, is an extension of its finding of a Government "run-around." According to the Court,

[t]he Government advances an interpretation of the Speedy Trial Act that would not merely encourage irresponsible gamesmanship, but eviscerate the Act altogether. Under its interpretation of *Oliver*, the Government would be free to file a complaint charging only conspiracy, knowing full well that in the event of a dismissal for violations of the Speedy Trial Act it would nevertheless be free to prosecute the substantive offense which the defendant allegedly conspired to do. For this reason, as well, the Government's position is untenable.

*Id.* The District Court's alarm is, paradoxically, both misdirected and well-founded. It is misdirected because the Court's real

quarrel is with Congress and our Circuit, which respectively drafted and construed the Speedy Trial Act in such a way that the Government may file a complaint charging conspiracy, aware that, in the event of a dismissal for violating the Speedy Trial Act, it may still prosecute the substantive offense. Nevertheless, the District Court's reservations are also well-founded, especially as Defendants in their reply brief raise for the first time *another* Speedy Trial Act violation in this case, previously unnoticed by all involved. When the Government filed its motion for a second thirty-day continuance, it misstated both the date that the first thirty-day period had expired and the date that the second thirty-day period was to begin. In other words, by incorrectly stating on September 20, 2001, that the first continuance was to expire that day, when in fact it had expired the day before, the Government had violated the Speedy Trial Act by one day. The Government concedes the error, which it attributes to inadvertence and poor recordkeeping. (This is, we note, the same excuse the Government offers for its later violation in failing to indict the Defendants timely.)

The disclosure of this additional error obviously is relevant, as it bolsters the District Court's warnings that relaxed enforcement of the Speedy Trial Act's strictures inevitably increases noncompliance by the Government. Though we accept the assurances provided by the Government in its briefs and at argument that it has implemented safeguards to prevent future mistakes, we empathize with the District Court's frustration. But this additional error, unhelpful as it is, ultimately does not affect our disposition of this appeal. The day-late motion for a second continuance was consented to by both Defendants to permit the parties additional time to explore a plea bargain. And as a practical matter, even were we inclined to hold that *this* Speedy Trial Act violation merited dismissal with prejudice, the result still would be dismissal of the conspiracy charge contained in the complaint, not the importation charge contained in the later indictment.

\* \* \* \* \* \*

We conclude on plenary review that the District Court erred in finding that the Government's reliance on *Oliver* was misplaced. The District Court's distinguishing of *Oliver* is pertinent but not persuasive. To the extent that there exists a gilding exception to the general rule that a Speedy Trial Act violation does not preclude a subsequent prosecution for an offense not contained in the dismissed original complaint, it does not apply here where the conspiracy and importation charges are separate offenses requiring proof of different elements. For these reasons, we reverse the decision of the District Court and remand for proceedings not inconsistent with this opinion.

NYGAARD, Circuit Judge, Concurring.

I join in the Majority's excellent opinion in its entirety. I write separately, however, to further address and express my support the District Court's "well founded" reservations concerning the potential for the Government to abuse the Speedy Trial Act. I share the District Court's concern. To further illustrate the District Court's frustration with the Government in this case, I will start with additional facts concerning the Appellee's willingness to acquiescence to the Government's requests for extension.

The defense agreed to these numerous extensions in the obvious hope of reaching a plea agreement. Neither woman had any prior criminal record and were (and apparently remain) willing to cooperate with the Government. Unfortunately, as

the District Court noted in reference to the progress of a plea agreement with Peoples, "Despite that these extensions were secured to allow time for plea negotiations, in fact the Government met only once with Ms. Peoples." *United States v. Watkins*, No. 02–120–1, 02–120–2, 2002 U.S. Dist. LEXIS 12284, at *3 (E.D.Pa. Mar. 12, 2002). Similarly, there were few meetings between the Government and Watkins. Both Appellees express a well-founded claim they felt the Government had simply forgotten them.

The Government, in a classic understatement, admits that the case was "somewhat back burnered." App. at 107–08. That is not good enough. In addition, Peoples' confinement conditions were terrible. After allegedly being sexually assaulted in the Federal Detention Center in Philadelphia, she was transferred from the frying pan to the fire—the Camden County Prison. *See* App. at 96. The conditions at the Camden County Prison are described as "notoriously poor," and Peoples raises various complaints about her confinement. *See id.* at 95, 98. Throughout this time, which eventually totaled eight months, Peoples' attorney attempted to contact the prosecution to reinitiate the negotiation process; but without success.

The District Court is empowered, when conditions warrant, to dismiss an indictment for failure to prosecute, even where the delay is not of constitutional proportions. *See United States v. Goodson*, 204 F.3d 508, 513–14 (4th Cir.2000). Federal Rule of Criminal Procedure Rule 48(b) and the court's supervisory powers provide authority to dismiss indictments, and when warranted, to dismiss with prejudice. *Id.*; Fed. R.Crim. Pro. Rule 48(b); *see also United States v. Dreyer*, 533 F.2d 112, 113 n. 1 (3d Cir.1976) (noting that Rule 48(b) is a "restatement of the court's inherent pow-

er to dismiss a case for want of prosecution.").

Rule 48(b) states: "The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in: (1) presenting a charge to a grand jury; (2) filing an information against a defendant; or (3) bringing a defendant to trial." Fed. R.Crim.P. 48(b) (2002). The advisory committee notes to the rule explain that Rule 48 operates independently from the Speedy Trial Rule. The Committee noted several cases addressing the court's power under Rule 48 and stated that it did not intend to change the relationship between that power and the Speedy Trial Act.

Although I will not conclude at this time that it would be appropriate for this court or the District Court to *sua sponte* dismiss the importation indictment, I write separately to suggest that if the Government does not live up to its assurances to implement safeguards to prevent future mistakes, the courts are not without a remedy.