**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2854
_____

UNITED STATES OF AMERICA

v.

LANCE YARBOUGH,
Appellant
_____

On Appeal from the District Court for the Western District of Pennsylvania
(D.C. No. 14-cr-00270-012)
District Judge: Honorable Reggie B. Walton
_____

Submitted Under Third Circuit LAR 34.1(a)
March 8, 2019
_____

Before: AMBRO, RESTREPO, and GREENBERG, *Circuit Judges.*

(Filed: August 23, 2019)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**RESTREPO**, *Circuit Judge*.

Following a bench trial, Lance Yarbough was convicted of conspiracy to distribute and possession with intent to distribute heroin. Yarbough was sentenced to the statutory minimum of ten years' imprisonment, followed by five years of supervised release. He appeals the judgment of conviction and sentence. We will affirm.

## I.

Because we write primarily for the parties, we set forth only the facts and history relevant to this decision. On December 9, 2014, Yarbough and eleven others were indicted for conspiracy to distribute heroin. Yarbough waived his right to a jury trial, and was tried and convicted by the District Court. His conviction in this case arose from his association with Hardcore Entertainment ("Hardcore"), a heroin distribution ring located in the Pittsburgh area.

### A.     Yarbough's Role in Hardcore

Yarbough held a significant role in Hardcore. He stored and sold heroin for the organization, facilitated drug transactions between upper and lower-level members, and he participated in meetings establishing Hardcore's hierarchy. He and other core members of Hardcore pooled funds to buy large quantities of heroin, which they then divvied up pro rata.

Some of this heroin was delivered by Ashley Auston, who was stopped by police with more than 600 grams of heroin during one of approximately one dozen trips she made between 2007 and 2008. Auston testified that two other individuals couriered similarly sized heroin deliveries on a weekly basis, and that she had witnessed Yarbough

2

and other Hardcore members divvying up the heroin based on the amount of money each put in.

## B. Yarbough's Prior Arrests

In October 2008, Yarbough was incarcerated for illegal firearm possession arising from a traffic stop involving him and three other Hardcore members. Hardcore continued its heroin trafficking operation while Yarbough was incarcerated. He returned to his role in Hardcore after his release in August 2011.

Then, in October 2012, police searched Yarbough's apartment and found 133 grams of heroin. Yarbough later pled guilty to possession with intent to distribute 100 grams or more of heroin. He was sentenced to 60 months in prison.

## C. Yarbough and Hardcore Indictment and Conviction

In December 2014, Yarbough and other Hardcore members were indicted and charged with conspiracy to distribute and possession with intent to distribute heroin between 2008 and 2012. He was charged with liability for one kilogram or more of heroin, exposing him to a statutory minimum of ten years' imprisonment. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i), 846.

Yarbough was convicted after a bench trial at the District Court in January 2017. Based on the evidence summarized above, *inter alia*, the Court found that "there is no reasonable doubt that [] Yarbough was a member of the charged conspiracy and had the specific intent to achieve the objectives of the conspiracy." J.A. 1783. The Court also found that Yarbough was responsible for one or more kilograms of heroin because the authorities seized heroin in excess of one kilogram from members of the conspiracy, and

3

because Yarbough had knowledge and reasonable foreseeability that Hardcore trafficked in this amount of heroine.

### D.    Yarbough's Sentencing

Following Yarbough's conviction, the United States Probation Office provided a Presentence Investigation Report ("PSR"), finding applicable a ten-year statutory minimum for distributing a kilogram or more of heroin under 21 U.S.C. § 841(b)(1)(A)(i).  The PSR determined Yarbough's advisory Guidelines range to be 292-365 months, based on Yarbough's criminal history category of III and a total offense level of 38.

Yarbough argued at sentencing that the Fifth Amendment's Double Jeopardy Clause necessitates that his previous convictions of drug and firearm possession should be credited towards his sentence for conspiracy.  The Court rejected this argument, finding that a conviction for conspiracy and separate convictions for substantive offenses related to that conspiracy are not the "same offense" for purposes of the Double Jeopardy Clause.

The Court also found that Yarbough was responsible for the amount of heroin attributable to him while he was not incarcerated during the length of the conspiracy. Based on the evidence at trial, Yarbough was found liable for 58.8 kilograms of heroin and a two-point offense level enhancement for gun possession for a total offense level of 38.

The advisory guidelines recommended over 24 years' incarceration, but the Court sentenced Yarbough to ten years' imprisonment—the statutory minimum—because his

4

role in the conspiracy was not as substantial as his co-conspirators, and because he had already served time in prison for the underlying substantive offenses connected to the conspiracy.

## II.

Yarbough appeals his judgement of conviction and sentence. The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## III.

## A.

We first address Yarbough's double jeopardy challenge. The standard of review is *de novo*. *United States v. Price*, 13 F.3d 711, 717 (3d Cir. 1994).

Yarbough argues that the Double Jeopardy Clause limits the imposition of a punishment for conspiracy when he has already been punished for underlying crimes that contributed to the conspiracy—namely, his imprisonment for illegal firearm possession and then for heroin possession—both of which were found to contribute to the conspiracy. Thus, Yarbough argues that the District Court erred by not granting a term of imprisonment that credits the prior sentences against the statutory minimum term.

We disagree. The Double Jeopardy Clause acts to prevent more than one prosecution or punishment for the "same offense." U.S. Const. amend. V. Offenses are the "same" if they share the same elements of required proof. *See United States v. Dixon,* 509 U.S. 688, 696, 704 (1993); *United States v. Miller*, 527 F.3d 54, 71 (3d Cir. 2008). "To prove a conspiracy, the government must establish a unity of purpose between the

alleged conspirators, an intent to achieve a common goal, and an agreement to work together toward that goal." *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999). The elements of unity of purpose, intent towards a common goal, and an agreement to work together are unique to Yarbough's conspiracy charge—the "same" elements are not found in his prior convictions for illegal firearm possession or possession with intent to distribute heroin.

Indeed, it has been a longstanding rule of this Court, and of the Supreme Court, that a charge of conspiracy and the underlying crimes effectuating it are not the same offense under the Double Jeopardy Clause. *See United States v. Watkins*, 339 F.3d 167, 177 (3d Cir. 2003) (quoting *United States v. Felix*, 503 U.S. 378, 389 (1992) ("A substantive crime and a conspiracy to commit that crime are not the 'same offencs' for double jeopardy purposes.")). Thus, the District Court did not err in finding the Double Jeopardy Clause is not implicated in this case.

**B.**

We next address Yarbough's argument that the District Court erred in its calculation of the amount of heroin attributable to him for sentencing purposes. The standard of review for the District Court's factual determination is clear error. *See Gibbs*, 190 F.3d at 197. Yarbough argues that the District Court committed clear error in its calculation of the heroin amount by placing too much weight on the testimony of several individuals with knowledge of the amount and frequency of the heroin shipments, and too little weight on an FBI-302 report referencing the same.

6

We have recognized that when "calculating the amount of drugs involved in a particular operation, a degree of estimation is sometimes necessary[,]" and a sentencing court may use testimony regarding average amounts sold in a period of time multiplied by the length of time sold. *Id.* at 203-204. In this case, the District Court considered testimony from a former courier, Ashley Austin, as well as former Hardcore conspirators Corey Thompson and Rodney Brown, in estimating the amount of heroin attributable to Yarbough. Any conflicts presented between these testimonies and the FBI-302 report raise issues of credibility, and the trial court assessments' of credibility are given great deference on appeal. *United States v. Givan*, 320 F.3d 452, 464 (3d Cir. 2003). This standard aside, we see no reason why the District Court could have committed clear error by relying on testimonial evidence to estimate the quantity of drugs attributable to Yarbough. *See United States v. Douglas*, 885 F.3d 145, 150-51 (3d Cir. 2018) (finding circumstantial and testimonial evidence sufficient for determining drug quantity). Thus, the District Court did not commit clear error in calculating the amount of heroin attributable to Yarbough.

## C.

Lastly, we address Yarbough's argument that the District Court erred in admitting evidence of his previous firearm conviction, and further erred by applying that evidence to find a two-point enhancement to his offense level. The standard of review for a trial court's decision to admit evidence is abuse of discretion. *United States v. Starnes*, 583 F.3d 196, 213-14 (3d Cir. 2009). And, because "the District Court's decision to apply the

enhancement was essentially factual, we review for clear error." *United States v. Drozdowski*, 313 F.3d 819, 822 (3d Cir. 2002).

Yarbough argues that the firearm evidence was irrelevant at trial, and thus should not have been admitted pursuant to Federal Rule of Evidence 402 and 403. The government, however, argues that the firearm evidence was properly admitted, because Yarbough was with three other co-conspirators during the arrest, and because firearms may be considered circumstantial evidence of drug trafficking, similar to a digital scale or large sums of money. We have previously noted that firearms possession is highly probative of drug distribution conspiracies because conspirators will use firearms to protect their operation. *Price*, 13 F.3d at 719 (citing *United States v. Pungitore*, 910 F.2d 1084, 1152 (3d Cir. 1990)). Thus, given this precedent regarding the firearm possession's relevance in proving a drug distribution conspiracy, and because the firearm evidence furthered evidence of Yarbough's affiliation with other Hardcore members, the District Court did not abuse its discretion in admitting the firearm evidence.

Finally, turning to the two-point offense level enhancement, the District Court did not commit clear error. This enhancement applies to a drug trafficking operation "if a dangerous weapon (including a firearm) was possessed" during the commission of the crime—here, the drug trafficking conspiracy. U.S.S.G. § 2D1.1(b)(1). Yarbough argues that because there was no heroin in the car when he was arrested for illegal firearms possession, this enhancement should not apply.

If the government shows possession of the firearm, as it has here, the defendant bears the burden of showing that the "drug-weapon connection was clearly improbable."

8

*United States v. Napolitan*, 762 F.3d 297, 309 (3d Cir. 2014). To that end, we consider four factors: "(1) the type of gun involved, with clear improbability less likely with handguns than with hunting rifles, (2) whether the gun was loaded, (3) whether the gun was stored near the drugs or drug paraphernalia, and (4) . . . whether the gun was accessible." *Drozdowski*, 313 F.3d at 822-23. Applying these factors, Yarbough is unable to meet his burden: he possessed a loaded handgun accessible in the car he was in. Thus, the absence of heroin at that arrest is not enough to invalidate the District Court's two-point sentencing enhancement. Therefore, the District Court did not commit clear error.

*        *        *

For the reasons stated, we will affirm Yarbough's judgment of conviction and sentence.